## IN THE MATTER OF ALVAH G. SLEEPER.

Suffolk. October 21, 22, 1924. — January 28, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Attorney at Law,* Disbarment. *Practice, Civil,* Disbarment proceedings, Finding by trial judge, Exceptions, New trial.

If, in a proceeding for the disbarment of an attorney at law, questions are presented to this court respecting general or special findings of fact made by the trial court, such findings must stand when they are warranted by direct testimony or as inferences from all the evidence.

In a proceeding for the disbarment of an attorney at law, upon evidence warranting the findings, a single justice found that the respondent made to two members of the State police statements in substance and effect that a client of his had represented that he already had paid on three different occasions large sums of money by way of blackmail to certain lawyers, that an appointment had been made for the client to go to a designated room in a Boston hotel, where he feared that a further demand would be made on account of the same matter, that the respondent advised his client to go pursuant to the appointment, that the respondent followed shortly after and found in the room three lawyers whom the respondent named, and that after a brief conversation all left the room and no money was paid; that at a hearing before a subcommittee of a committee of a bar association on grievances, which was investigating the conduct of some of the lawyers named, the respondent denied having made such statements to the police officers; and at the hearing before the single justice he also denied having made such statements. *Held,* that

(1) There was no error in a refusal by the single justice to rule that upon all the evidence there was nothing to show deceit, malpractice or other gross misconduct on the part of the respondent;

(2) A conclusion by the single justice, that the respondent "was guilty of gross misconduct when, before the subcommittee of the grievance committee of the" bar association "he untruthfully denied that he had told" the police officers "the story hereinbefore referred to," disclosed no error of law, whether it be considered a finding of fact or a ruling of law;

(3) It was proper for the single justice to refuse to rule that there was no evidence to support any finding other than that the respondent had been faithful to all his duties to his client and as an attorney and counsellor of this court.

A proceeding for disbarment of an attorney at law because he made to police officers statements relating to affairs of a client involving unprofessional conduct of certain named attorneys at law with the client and later, on inquiry by representatives of a bar association, denied having made such statements, was not designed to elicit information as to the relations of the respondent with his client but to determine whether the respondent's professional conduct had been so reprehensible as to render it proper, with a due regard to the public welfare, for him longer to be a member of the bar; and therefore it was proper for a single justice hearing the case to refuse to rule that "the petition for disbarment was not a proper method to obtain the information sought; the respondent should have been informed by legal process of the information sought, and, in case of dispute as to the duty of disclosure, the court should have determined that issue, and the information, if proper, should have been imparted under the protection of the court."

At the trial of the proceedings for disbarment above described, a material issue was, whether the respondent had made to the police officers the statements which they testified he had made and which he testified he had not made, and there was no possibility of reconciling the completely repugnant and incompatible testimony of the respondent on the one hand and of the police officers on the other. The single justice found that the respondent in giving his testimony at the trial "knowingly failed to tell the truth, and was guilty of the crime of perjury." *Held*, that the finding was pertinent to a material issue and disclosed no error of law.

The single justice who presided at the hearing above described, while finding the respondent guilty of gross misconduct as alleged, ruled, "No order of disbarment is made on this finding," but ordered, "An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me." *Held*, that

(1) The two quoted sentences must be read together;

(2) The two sentences did not mean that the respondent would not have been disbarred or disciplined at all because of the falsehood told out of court;

(3) The two sentences taken together signified that, whatever discipline might have been inflicted for the gross misconduct committed out of court, the order for disbarment was made because the very falsehood previously told out of court was repeated on the witness stand before the single justice and thus perjury was committed, and on that ground alone;

(4) Although the finding of perjury was proper, it was not due process of law, and was error, for the single justice to disbar the respondent for the perjury committed at the trial before him without a charge of that specific nature having been made and his being given an opportunity to be heard thereon;

(5) *It seems* that, if the single justice had issued to the respondent an order to show cause why he should not be stricken from the roll of attorneys for the cause of perjury committed in the pending trial, he could have heard that charge summarily and entered the judgment thereon which seemed to him to be required;

(6) The orders, "No order of disbarment is made on this finding" of gross misconduct and "An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me," were vacated and the proceeding was ordered to stand for disposition before a single justice upon all the findings of fact made by the single justice who formerly heard the case, such weight to be given to such findings as they seemed entitled to and such order to be made as the single justice should be of opinion justice required.

No error of law is disclosed in a denial of a motion for a new trial of a proceeding for disbarment of an attorney at law based on alleged newly discovered evidence, and especially where the single justice would have been warranted in finding that the evidence was not newly discovered.

It is not, as matter of law, an unlawful exercise of discretion by a trial judge to deny a motion for a new trial based on alleged newly discovered evidence, even if the evidence is newly discovered and is material.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on October 1, 1920, by The Bar Association of the City of Boston, praying that Alvah G. Sleeper "may be removed from the office of attorney at law in this Commonwealth, or that such other action may be taken as" the court "may deem wise."

The substance of the specifications in the petition, as stated in the bill of exceptions, was as follows:

"1. That the respondent was guilty of gross misconduct when he came voluntarily to testify before the committee of the Bar Association, and deliberately lied to the committee by denying that he had told Arthur E. Keating and William H. Proctor a story as to representations made by his client to him, as said Keating and Proctor had in substance testified before the committee.

"2. That if said story was true he was guilty of gross misconduct as a citizen and *a multo fortiori* as a member of the bar in lying about it to shield Joseph C. Pelletier and

Daniel H. Coakley, and prevent the exposure of an offense so serious.

"3. That if the story was false, the respondent was guilty of gross misconduct in that he told the whole of it to said Keating and Proctor, and parts of it to the Committee in William G. Thompson's office, thereby exposing a public official and brother lawyers to lying and disgrace, and in that later at the formal hearing before the Committee, he so qualified his denials, and so declined without any sufficient· reason to testify on important details, as to furnish only a partial exoneration of the men he had traduced."

By virtue of the authority given by R. L. c. 165, § 44; St. 1919, c. 260, the Attorney General, with the approval of the court, designated Henry F. Hurlburt, Esquire, to conduct the proceedings.

The petition was heard by *Jenney*, J.   Material evidence at the hearing is described in the opinion.   At the close of the evidence, the respondent asked for the following rulings:

"1. Upon all the evidence in the case there is nothing to show deceit, malpractice, or other gross misconduct upon the part of the respondent.

"2. That there is no evidence to support any finding other than that the respondent has been faithful to all his duties to his client and as an attorney and counsellor of this court.

"3. That the charge of gross misconduct on the part of an attorney, constituting a cause of disbarment, consists of moral turpitude in his relations with his client.

"4. That scurrilous remarks of one attorney relative to another are not cause for disbarment, the remedy being a civil one to be instituted by the one aggrieved and is answerable in damages.

"5. That the petitioning corporation has no control over the respondent who is a non-member; that his appearance before it is purely voluntary and he is under no obligation to disclose any act to said association or any committee thereof.

"6. That the respondent was under no obligation to disclose any confidential relation with any client, where the identity of the client is in dispute, until ordered by the court to make such disclosure.

"7. That the finding as a fact by the court of the identity of the client and the disclosure by the attorney upon the witness stand, in consequence of such finding and order of the court, constitutes an exoneration of the attorney from any charge relative to the refusal previously to disclose such information.

"8. That the petition for disbarment was not a proper method to obtain the information sought; the respondent should have been informed by legal process of the information sought, and, in case of dispute as to the duty of disclosure, the court should have determined that issue, and the information, if proper should have been imparted under the protection of the court.

"9. That the petitioner had no right to receive that information without order of the court and that the respondent owed no duty to impart such information except under order of the court."

The single justice filed a document entitled "Findings of Fact, Rulings and Order," which is set out in full in the opinion. The respondent alleged exceptions.

On November 26, 1923, under G. L. c. 221, § 40, Frederick W. Mansfield, Esquire, was designated by the Attorney General, with the approval of the court, to conduct the proceedings in succession to Henry F. Hurlburt, Esquire, who had declined further service.

*W. B. Grant,* (*W. P. Dyer & F. M. Ryder* with him,) for the respondent.

*F. W. Mansfield,* by designation of the Attorney General.

RUGG, C.J. This is a petition for the disbarment of the respondent, an attorney at law. One of the charges set forth in the petition for disbarment was that the respondent had told separately to Arthur E. Keating and to William H. Proctor, both members of the State police, that one of the respondent's clients, Hollis H. Hunnewell by name, had represented that he already had paid on three different occasions a large sum of money by way of blackmail to certain lawyers; that an appointment had been made for him to go to a designated room in a Boston hotel, where he feared that a further demand would be made on account of the same

matter; that the respondent advised Hunnewell to go pursuant to the appointment; that the respondent followed shortly after and found in the room three lawyers, who were named to Keating and to Proctor, and that after a brief conversation all left the room and no money was paid, and that the respondent voluntarily appeared before a committee of the Boston Bar Association to make a statement concerning this affair and deliberately lied about it by denying that he had told to Keating and Proctor the matters and things repeated by them. There were other charges connected with the same transaction, but it is not necessary to state them because the findings center about this one.

The case was heard at length before a single justice. He filed " Findings of Fact, Rulings and Order " as follows:

" I find as follows: —

" (1) Alvah G. Sleeper made to Arthur E. Keating and William H. Proctor in substance the statements set forth in the petition for his disbarment. This finding is based not only on the testimony of Keating and Proctor but upon that of other witnesses. It is supported by the conduct of Sleeper.

" (2) Sleeper at the hearing before the subcommittee of the grievance committee of the Boston Bar Association finally denied that he ever made the statements.

" (3) While upon the witness stand before me as a witness in his own behalf he denied making them.

" (4) In giving such testimony, he knowingly failed to tell the truth, and was guilty of the crime of perjury.

" (5) There was no evidence that the statements made by Sleeper to Keating and Proctor were true. Sleeper not only denied making them but negatived the facts set forth therein. The parties referred to in the statements emphatically denied their truth. Hollis H. Hunnewell, named therein, although in New York, was unwilling to come to this Commonwealth to give testimony, and his deposition was not taken.

" (6) There was evidence that Hunnewell had consulted Sleeper concerning a claim which he (Hunnewell) stated to Sleeper had been made upon him.

" (7) Hunnewell waived any privilege as to what had taken place between Sleeper and himself.

" (8) Sleeper was guilty of gross misconduct when, before the subcommittee of the grievance committee of the Boston Bar Association he untruthfully denied that he had told Keating and Proctor the story hereinbefore referred to. No order of disbarment is made on this finding.

" The respondent duly requested certain rulings which are hereto annexed. I refuse those numbered 1, 2 and 8. Those numbered 3 and 4 are immaterial in view of my order; those numbered 5, 6, 7 and 9 are given, although some of them are now immaterial and very likely too broad in their scope.

" An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me."

A proceeding for the disbarment of an attorney at law is at common law and not in equity. Therefore, when in such proceeding questions are presented to this court respecting general or special findings of fact made by the trial court, such findings stand when they are warranted by direct testimony or as inferences from all the evidence. The only matter for us to decide, even upon a full report of the evidence, is whether the general or special findings made can be sustained on any reasonable view of the case as presented to the trial court. *Randall, petitioner,* 11 Allen, 473. *Boston Bar Association* v. *Greenhood,* 168 Mass. 169, 182. *Boston Bar Association* v. *Casey,* 227 Mass. 46, 51. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143, 144.

There was no error of law in denying the respondent's request to the effect that there was nothing in the evidence to show deceit, malpractice or other gross misconduct on his part. It appears to be conceded that in the spring or summer of 1920 a committee of the Boston Bar Association had under consideration and investigation charges against two Boston attorneys to the effect that they had conspired to extort money from Hollis H. Hunnewell by threats of criminal prosecution. There seems also to be no dispute about the fact that Keating and Proctor, members of the State police, each appeared before that committee and made a statement respecting those charges against the two Boston attorneys. There was ample evidence before the single

justice to the effect that each made a statement before that committee in substance and effect that the respondent had told the witness in categorical detail that a client had consulted the respondent about a request that he go to a room in a Boston hotel at a specified time to meet the two lawyers then being investigated by the committee; that, after preliminary advice, the client went to the room in the hotel as requested, where the respondent soon followed and found there these same two lawyers, together with another; that some conversation followed and the meeting broke up without any money being paid. Proctor also said that he told the respondent that the client was Hollis H. Hunnewell, and the respondent replied that that was so. There was evidence tending to show that thereafter the respondent came before the same committee. He first declined to make any statement whatever respecting what occurred in the room in the hotel and later, on examination by one of the attorneys whose conduct was being investigated and who was said to have been in that room, declared unequivocally that that attorney was not in the room. He also asserted that he had never made to either Keating or Proctor a statement that he had seen the attorneys under investigation at the room in the hotel. A stenographic report of the statement made to that committee by the respondent was presented in evidence. Keating and Proctor testified before the single justice. Their testimony does not appear to differ in any material particular from their statements to the committee. The ground covered by the several statements to the committee was the subject of full inquiry at the trial before the single justice as well as all other matters involved. The respondent also testified before the single justice, as did numerous other witnesses who had talked with him about this subject. No further review of the evidence is necessary to demonstrate that it was a pure question of fact whether the charge for disbarment already summarized was proved. The credibility of witnesses was wholly for the single justice. If the testimony of Keating and Proctor and that of other witnesses were believed, that charge was sustained.

It follows that there was no error of law in denying the

first request for ruling. Paragraphs (1), (2) and (3) of the findings of the single justice are amply supported by evidence.

The first sentence of paragraph (8) of the conclusions of the single justice discloses no error of law. If it be treated as a finding of fact, it plainly is supported by the evidence. In this aspect it is but little more than a summarization of the special findings which have gone before, except that embodied in paragraph (4). If it be regarded as a ruling of law, it is free from error. An attorney at law who made, to two members of the State police, one of whom at least was engaged in an official investigation, statements concerning other members of the bar of the nature shown on this record, and who later, when charges of the same character as those described in his statements were being investigated by a committee of the Bar Association, denied that he ever made such statements, is guilty of gross misconduct. It was a flagitious falsehood. If the statements made to the State police were false, it was his clear duty to say so before the committee of the bar association. That committee was engaged in an important and highly estimable public service in making inquiry into the conduct of two members of the bar against whom grave charges had been made. If the charges were groundless, the two members of the bar were entitled to exoneration; if they were well founded, proceedings for their disbarment ought to be instituted to the end that they be removed from the ranks of an honorable profession and thus the public be protected and the administration of justice purged of untrustworthy officers. It was a painful duty which the committee was trying to discharge. To make false statements to a committee undertaking such salutary public service is a peculiarly atrocious form of untruth. Conduct of that nature violates the standard of probity and rectitude which is a fundamental prerequisite for every attorney at law. Common honesty is essential for every lawyer. The want of it constitutes adequate ground for disbarment. *Berman* v. *Coakley*, 243 Mass. 348, 354, and cases there cited.

Plainly, in view of what we have already said, the second request ought not to have been given, to the effect that

there was no evidence to support any finding other than that the respondent had been faithful to all his duties to his client and as an attorney and counsellor of the court. No one could be regarded as faithful to the obligations imposed on him as a member of the bar who committed the acts found to have been done by the respondent.

The finding made in the course of the trial as a basis for a ruling and embodied in paragraphs (5), (6) and (7) of the conclusions of the single justice, to the effect that the respondent was consulted by Hollis H. Hunnewell with respect to his relations with a designated woman, also finds support in the evidence. Several witnesses testified with greater or less positiveness that the respondent had identified a man of that name as his client. It was the exclusive province of the trial justice to follow his own convictions in believing that identification and in discrediting the testimony of a contrary tenor. *Boston Bar Association* v. *Hale*, 197 Mass. 423, 436.

It is not necessary to review the evidence in detail or to discuss the various arguments designed to support the credibility of the respondent and to throw distrust upon that of other witnesses. The trial justice was acting wholly within the bounds of his duty in passing upon all those matters. His conclusions are not subject to review here.

The eighth request was refused rightly. This petition for disbarment was not designed to elicit information as to the relations of the respondent with his client but to determine whether the respondent's professional conduct has been so reprehensible as to render it proper with a due regard to the public welfare for him longer to be a member of the bar. Inquiry as to his relations with his client Hunnewell was merely and properly incidental to that main issue.

There was no error of law in the finding (4) by the single justice that the respondent in giving testimony at the trial before him "knowingly failed to tell the truth, and was guilty of the crime of perjury" in a designated particular. Of course, no charge of such perjury was or could be included among the charges set forth in the petition for removal of the respondent. One of those charges was that he was

(to quote the words of his exceptions), " guilty of gross misconduct when he came voluntarily to testify before the committee of the Bar Association, and deliberately lied to the committee by denying that he had told Arthur E. Keating and William H. Proctor a story as to representations made by his client to him, as said Keating and Proctor had in substance testified before the committee." The respondent in his answer denied that he had made such false statement. The subject of the veracity and honesty of the respondent touching a specified matter was thus directly put in issue. The charges confined the inquiry as to that veracity and honesty to a designated occasion. When the respondent offered himself as a witness in his own behalf, it was inevitable that his examination would cover that specified matter. The entire issue on that charge was whether he had made the statements to Keating and Proctor which they said he had made to them. Nobody contended that those statements were true because there was no evidence that they were true. In its last analysis one inevitable and necessary question for the single justice to decide was whether the respondent was telling the truth with reference to the matter specified in the charge. The respondent as a reasonable man must have known that that was a necessary and inevitable question for decision. The only escape from the decision of that question would be so utterly to disbelieve Keating and Proctor and the other witnesses as never to reach the question whether the respondent was telling the truth. That, however, was very remote. Their testimony would naturally be given some credence under all the circumstances. The respondent was not advised to rest his case without testifying himself. It is manifest that there was categorical contradiction between the testimony of Keating and Proctor, corroborated by other testimony, on the one side, and the testimony of the respondent, on the other side. There was no possibility of reconciling such completely repugnant and incompatible testimony. There was no rational ground for thinking that the testimony on the one side or the other was mistaken. That on both sides could not be true. That on one side must be false.

The respondent and intelligent counsel must have perceived all that when the respondent took the witness stand to testify in his own behalf.   His whole hope of prevailing in the case rested on the question whether the single justice would believe his testimony.   The issue really narrowed to the single point whether the respondent was telling the truth or was committing perjury in his testimony respecting the specification of the charge.   If such a situation had presented itself on a trial to a jury, counsel on each side in their arguments rightly would have discussed the truthfulness of such a witness.   The presiding judge in his charge rightly could have told the jury that the real point for them to consider was the veracity of such a witness.   These are but various phrases for expressing the thought described with technical accuracy by the inquiry, did he commit perjury, or not?   Since the single justice could not escape deciding the question whether the respondent was committing perjury before him, it was the part of frankness and of propriety on his part to state that fact as one of his findings.   It showed the grounds on which rested his ultimate findings of the facts. Perjury of a witness in testifying before a court is not infrequently taken into account in that very proceeding.   In cases where, in addition " to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty " is found to exist, the witness adjudged guilty of such conduct may be committed for contempt.  *Ex parte Hudgings,* 249 U. S. 378, 383, where *United States* v. *Appel,* 211 Fed. Rep. 495, is cited with approval.   As before pointed out, the incidental finding that a witness has committed perjury is not infrequently the basis of the verdict of a jury.

The first sentence of paragraph (8) of the findings of the single justice is in effect a necessary conclusion from paragraphs (1), (2), (5), (6) and (7).   It is in substance both a finding and a ruling.   As has been pointed out earlier in this opinion, it is not tainted with any error of law.   The second sentence of paragraph (8) is in these words: " No order of disbarment is made on this finding."   That sentence must be read in connection with the final sentence of the

conclusions, which is in these words: "An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me." The meaning of these two sentences read together is that the single justice, although finding the respondent guilty of gross misconduct as charged in the petition for removal, did not make an order for disbarment on that ground alone; he passed the question by without decision, whether such order ought to be made; but, because the respondent had committed perjury in defence to the petition for removal touching the very incident on which the charge in the complaint was framed, his character and conduct were such that an order for disbarment was made. These two sentences do not mean that the respondent would not have been disbarred or disciplined at all because of the falsehood told out of court. That would be unthinkable conduct on the part of any judge who had made the findings here set forth. If it were susceptible of that construction, it would be manifestly erroneous as matter of law. These two sentences taken together signify that, whatever that discipline might have been for the gross misconduct by itself, the order for disbarment was made because the very falsehood previously told out of court was repeated on the witness stand before the single justice and thus perjury was committed, and on that ground alone.

We accept unqualifiedly and adopt without reservation the statement of law in *Ex parte Robinson*, 19 Wall. 505, at pages 512, 513: "There may be cases undoubtedly of such gross and outrageous conduct in open court on the part of the attorney, as to justify very summary proceedings for his suspension or removal from office; but even then he should be heard before he is condemned. The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression wherever power may be lodged."

The right of the respondent to practise his profession so long as he behaved himself therein is protected both by the Constitution of this Commonwealth and that of the United

States. That right is both liberty and property, partaking of the nature of both, and is guaranteed by constitutional mandate against unwarrantable interference. The respondent cannot be deprived of it except by proceedings complying with due process of law. *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428. *Attorney General* v. *Pelletier*, 240 Mass. 264, 295. *Selling* v. *Radford*, 243 U. S. 46, 51.

The case at bar is a proceeding for removal of the respondent on the ground of false statements made by him out of court, but upon a solemn occasion where highly important proceedings were pending. Of that alleged misconduct the petition for removal gave the respondent ample notice. He offered himself as a witness on his trial of that petition and repeated the same statement, found by the single justice to have been false when made out of court, while he was testifying as a witness under oath. It may be that this is the kind of case referred to as an exception to the general rule requiring special notice to an offending attorney of the grounds of complaint, stated in these words in *Bradley* v. *Fisher*, 13 Wall. 335, 354, 355: " . . . except where matters occurring in open court, in presence of the judges, constitute the grounds of its action, . . . and even where the matters constituting the grounds of complaint have occurred in open court, under the personal observation of the judges, the attorney should ordinarily be heard before the order of removal is made." Nevertheless we are of opinion that before disbarment was made on that ground alone, there ought to have been a charge of that specific nature and opportunity to be heard. This however does not affect the validity of this finding in connection with the other findings. The respondent in the case at bar was fully heard on the matter whether he had made the statement to Keating and Proctor as they had testified. That was the whole point of his trial. He was given ample notice of that charge by the petition on which he was being tried to the end that, if found guilty, he might be disciplined. That was the very subject about which he volunteered his own testimony before the single justice. The charge itself implied that if his statement

before the bar committee, alleged in the petition to have been false, were found to have been false, the repetition of the same statement on his trial would be perjury and that such perjury could not escape the attention of the trial justice and could not fail to be given weight in the order made on the petition for removal. The respondent had the fullest opportunity to be heard on that subject. Every opportunity for explanation or defence or apology on that subject already had been afforded him. That is a necessary inference from the trial itself upon the charges contained in the petition. It is demonstrated by a careful examination of the entire record. He repeated under oath in court the same falsehood made out of court before the committee. This is not an instance of perjury committed upon some collateral and incidental though material matter, but upon the very subject of the trial when that subject is the truth or falsity of a previous statement made by the witness himself.

There are numerous decisions where the fact that an attorney has attempted to avert an order for disbarment or discipline by perjured testimony has been taken into account and apparently given weight in the ultimate decision and in the penalty imposed for lapses from professional integrity. *Matter of Cohn,* 120 App. Div. (N. Y.) 378. *Matter of Joseph,* 135 App. Div. (N. Y.) 589. *Matter of Smith,* 148 App. Div. (N. Y.) 291. *Matter of Levine,* 148 App. Div. (N. Y.) 296. *Matter of Voxman,* 148 App. Div. (N. Y.) 286, 290. *Matter of Thorn,* 164 App. Div. (N. Y.) 151. *Matter of Nichols,* 165 App. Div. (N. Y.) 901. *People* v. *Brown,* 218 Ill. 301, 308. *State* v. *Peck,* 88 Conn. 447, 458, 459. The case at bar is nothing more than this. It is supported by these authorities.

It requires no discussion to demonstrate that the commission of perjury by an attorney at law is sufficient ground for disbarment. Indeed, it is difficult to conceive of the commission of such an offence by an officer of the court which would not require disbarment. There is no room in the profession of the law for those who commit deliberate falsehood in court.

The conclusion is that there is no error of law on this record in the denial of requests for rulings. *Randall, petitioner,* 11 Allen, 473. *Randall* v. *Brigham,* 7 Wall. 523. *Ex parte Wall,* 107 U. S. 265. *Matter of Allin,* 224 Mass. 9, and cases there collected.

There was error, however, in entering the order for disbarment. It was not in accordance with law that the order for disbarment should be rested solely on the ground of perjury committed in the course of the trial for disbarment.

If the order for disbarment were to be made on that ground alone, a charge to that effect ought to have been made. If the single justice had issued to the respondent an order to show cause why he should not be stricken from the roll of attorneys for the cause of perjury committed in the pending trial, he could have heard it summarily and entered the judgment thereon which seemed to him to be required. But he did not do that. He distinctly did not enter any judgment on the charges set forth in the petition for disbarment. He rested the order for disbarment exclusively on the perjury set forth in finding (4). As already pointed out, that finding was not tainted with error of law and could lawfully have been made. But it could not, standing alone, have been made the sole ground for disbarment.

It follows that there was error in the order for judgment, that is, the order for disbarment on the grounds stated. The orders contained in the final sentence of paragraph (8), "No order of disbarment is made on this finding," and in the final sentence of the "Findings of Fact, Rulings and Order," namely, "An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me," are vacated. The case is to stand for disposition before a single justice upon all the findings of fact made by the justice who heard the case. He is to give all such findings the weight to which they seem entitled and make such order as he thinks justice requires.

After the order for disbarment was made, a motion was filed by the respondent to vacate the findings and order theretofore made, on the ground that the order for disbarment for the cause stated was contrary to law. That matter

has already been considered and decided on the first bill of exceptions. It is not open on the second bill of exceptions. Some months later a like motion was filed on the ground of newly discovered evidence. That motion was supported by affidavits which, if believed, had a tendency to prove that Hollis H. Hunnewell and the respondent saw each other by prearrangement in the presence of others in New York and that thereafter each made affidavit that he had never before seen the other, and that the one had never been the client of the other. The motion was denied and the respondent excepted. It appears from the findings of the single justice as recited in the main bill of exceptions that Hunnewell was in New York at the time of the trial and refused to come to this Commonwealth to give testimony, and that his deposition was not taken. The motion was in substance and effect to grant a new trial because of newly discovered evidence. The disposition of such a motion commonly rests in sound judicial discretion. The single justice well may have thought that this was not newly discovered evidence but had been available to the respondent at all crucial times. Apparently it was simply corroborative of evidence given at the trial. The conduct of Hunnewell in connection with the whole transaction, and especially in refusing to come within the Commonwealth so that he could be called as a witness, may have led the court to discredit his affidavit. Even evidence in truth newly discovered and material does not require a new trial. This aspect of the case is fully covered by many decisions. *Berggren* v. *Mutual Life Ins. Co. of New York*, 231 Mass. 173, 176, *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 495 to 497, *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32, 33, and cases collected in each opinion. *Boston Bar Association* v. *Scott*, 209 Mass. 200, 204. There was no error in denying the motion for new trial on the ground of newly discovered evidence.

The result is that the first bill of exceptions must be sustained. The orders that, "No order of disbarment is made on this finding," and that, "An order is to be entered disbarring the respondent solely on the ground of perjury committed in the trial before me," are vacated. All findings of

fact are to stand.    The petition is to be heard before a single justice on those findings of fact for such disposition as he may determine.    G. L. c. 231, § 124.    *Simmons* v. *Fish,* 210 Mass. 563.    *Commonwealth* v. *Dyer,* 243 Mass. 472, 509. The second bill of exceptions is overruled.    The appeals are dismissed.    *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133.

*Ordered accordingly.*