## IDA M. BLANKENBURG *vs.* COMMONWEALTH.

Suffolk.   October 8, 1929. — June 30, 1930.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Contempt.  Perjury.  Error, Writ of.  Probate Court,* Jurisdiction, Contempt proceedings, Findings by judge.  *Constitutional Law,* Due process of law, Impartial tribunal.  *Law of the Case.  Evidence,* Judicial knowledge.

Principles of law stated in a decision by this court must be regarded as settled when the case again comes before this court after further hearing.

Where a single justice, after hearing a petition for a writ of error to reverse a judgment upon the petition, the assignment of errors, the record of the court in which the judgment had been entered, the writ of *scire facias* and a plea *in nullo est erratum* by the defendant in error, without the hearing of any evidence, ordered the entry of an order affirming the judgment and reported the case to the full court, the questions before the full court were confined to those appearing upon the face of the record and described in the assignment of errors.

Findings of fact by a judge, upon which is based a judgment of criminal contempt committed in his presence, and which appear in the record returned by him upon a petition by the contemnor for a writ of error to reverse that judgment, must be accepted as true by this court in considering the petition: such findings import a finding of all incidental and inducing facts and the drawing of all permissible inferences necessary to the conclusion reached, and it must be presumed that the judge was without a reasonable doubt in making them.

In order to punish as a criminal contempt perjury committed in the presence of a court, there must be added to the essential elements of perjury ·under the general law the further element of obstruction to the court in the performance of its duty.   Per RUGG, C.J.

A woman, asserting that she was a daughter of a deceased woman, appeared in a probate court to oppose a petition for proof of the deceased woman's will.   The proponent of the will moved to have the appearance struck out on the ground that the respondent was not an heir at law or one of the next of kin of the testatrix.   Hearings on the motion occupied twenty-two days.   Thereafter the judge of probate found as facts that the respondent's claim was false and fraudulent and wilfully made by her; that she had given false testimony at the hearings in support of the claim; that she had procured another to testify falsely thereat in support of the claim; that certain of her

testimony was "a manifest effort by means of persistent perjury to baffle the inquiry then being made by the court"; that she committed persistent and wilful perjury and was actuated by a corrupt purpose; and that by her conduct she had delayed the proceedings of the court, obstructed justice and committed acts against the dignity and authority of the court. He adjudged her guilty of contempt committed in his presence. *Held,* that the findings showed more than mere perjury by an ordinary witness: they showed beyond doubt perjury with the additional element of obstruction to the judge in the performance of his duty; and the adjudication of contempt was warranted.

Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial generally safeguarding the rights of the citizen. Per RUGG, C.J.

The adjudication of contempt above described was made in the following manner: At the close of the hearings on the motion to strike out the respondent's appearance, the judge of probate in her presence read aloud a statement in writing setting forth that she had committed perjury and had attempted to obstruct the administration of justice. She at once was arrested in open court and required to give security for her appearance four days later to show cause why she should not be adjudged in contempt. She then was released upon furnishing such security. The Attorney General prepared and filed specifications, and the respondent was notified of a hearing thereon. Hearing later was held by the judge, at which the respondent was represented by counsel and permitted to testify. The findings and adjudication by the judge were made after such hearing. Upon a petition for a writ of error to reverse such judgment, the judge of probate returned the record of such proceedings before him. *Held,* that

(1) The evidence upon which the findings by the judge were reached was not a part of the record before this court;

(2) There was no merit in a contention by the plaintiff in error either that the findings were erroneous or that they were made by an erroneous method;

(3) The conduct of the plaintiff in error constituted a course of action which was operative up to the moment of her arrest and constituted a direct contempt committed in the presence of the judge of probate;

(4) The issuance and service upon the plaintiff in error of a warrant or other process therefore were not necessary to the validity of the arrest;

(5) Although the judge of probate in such circumstances properly might have proceeded at once to deal with the matter summarily, it also was within his power to continue the matter for future hearing as if the accusation were an indirect contempt;

(6) Every step in procedure necessary for a prosecution for indirect contempt properly was taken by the judge of probate;

(7) It was within the discretion of the judge of probate to deter-

mine whether the plaintiff in error should be permitted to examine certain exhibits by a handwriting expert, the genuineness of which had been in issue at the previous hearings on the motion to strike out her appearance; and there was no error in a refusal to permit such examination;

(8) The judge of probate at the hearing as to contempt rightly could rely on his judicial memory of what had occurred at such previous hearings;

(9) Assuming that it was open to the plaintiff in error on this record to question a refusal by the judge of probate to permit her to "read into the record" of the hearing as to contempt the testimony of witnesses who had testified at such previous hearings, no error was shown;

(10) The arrest of the plaintiff in error for direct contempt having been legal, no error was shown in a refusal by the judge of probate to strike out certain specifications which, although detailing certain matters not occurring in the actual presence of the judge, in effect related to a single scheme having its fruition in what occurred in his presence; furthermore, even if it be assumed that these specifications related to matters susceptible of being treated as indirect contempt, every requirement for procedure in cases of indirect contempt had been followed;

(11) A motion by the plaintiff in error, that the charges of contempt be heard by another judge by reason of alleged bias and prejudice manifested by the judge of probate in his statement in her presence, properly was denied, such statement not showing any resentment, anger or other unjudicial attitude toward her on the part of the judge;

(12) No right of the plaintiff in error under art. 12 or art. 29 of the Declaration of Rights was violated;

(13) There was no merit in a contention by the plaintiff in error that she had been denied due process of law;

(14) The record before this court disclosed no error.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on August 19, 1925, and afterwards amended, for a writ of error to reverse a judgment of contempt entered against the plaintiff in error in the Probate Court for the county of Suffolk.

Writs of error and *scire facias* were issued and returns made by the judge of probate, as described in the opinion. The defendant in error filed a plea *in nullo est erratum.* The case was heard by *Pierce,* J., who ruled as a matter of law that the writ would not lie to review the judgment of the Probate Court and ordered the petition dismissed. The case previously was before the full court upon a report by

the single justice, and, in a decision reported in 260 Mass. 369, the order dismissing the petition was reversed.

The case thereafter was heard by *Pierce*, J., upon the merits. He ordered the entry of an order affirming the judgment of the Probate Court and again reported the case for determination by the full court.

*J. J. Cummings*, for the petitioner.

*R. A. Cutter*, Assistant Attorney General, for the Commonwealth.

RUGG, C.J. This is a petition for a writ of error to reverse a judgment of contempt entered against the petitioner in a probate court. The case was here in 260 Mass. 369. It then was decided that in this Commonwealth probate courts have jurisdiction to punish for criminal contempt, that writ of error lies in appropriate cases to reëxamine a judgment for criminal contempt entered by such court, that such reëxamination extends to errors of law and to such errors as to extraneous facts, if any, as were not involved in the hearing on the merits of the judgment to be reëxamined, that a rehearing cannot be had upon the merits of the findings of fact made by the trial judge, that the evidence heard by the trial judge is no part of the record, and that power to enter judgment for contempt on the ground of perjury was not cut down or affected by G. L. c. 268, § 4. Those principles must be regarded as settled. After rescript in accordance with that decision the case came on for hearing upon the substitute petition, the amended assignment of errors, the record of its proceedings returned by the probate court, the writ of *scire facias*, and the plea in effect *in nullo est erratum* of the defendant in error. No evidence was offered. The single justice denied the requests for rulings presented by the plaintiff in error, entered an order affirming the judgment, and then reported the questions of law thus raised. These questions are confined to those appearing upon the face of the record as returned and described in the assignment of errors.

The judgment sought to be reversed is based on a finding that the plaintiff in error was guilty of contempt committed in the presence of the court through wilful and intentional perjury, subornation of perjury, deliberate attempt to

deceive the court, delaying the proceedings of the court, and obstruction of justice. It arose in this way: The will of Lotta M. Crabtree was offered for probate. The plaintiff in error, asserting that she was a daughter of the decedent, entered her appearance in opposition to the allowance of the will. Those named as executors moved to have her appearance struck out on the ground that she was not an heir at law or next of kin of the decedent. The issue thus raised was whether the plaintiff in error was a child of the decedent. At the close of the twenty-second day of hearings on this motion the trial judge, impelled as he said by a sense of duty as a public servant, read aloud in the presence of the plaintiff in error a statement wherein it was set forth that the claim of the plaintiff in error to kinship with the decedent was fraudulent, and some other matters respecting which the plaintiff in error had committed perjury and attempted to obstruct and degrade the administration of justice. The plaintiff in error was at once arrested in open court. She also was required to appear on the fourth day thereafter to show cause why she should not be adjudged in contempt and to furnish bond for her appearance. The Attorney General as the chief prosecuting officer of the Commonwealth was requested to appear at the same time and place to assist in the preparation of specifications and in presenting evidence. The plaintiff in error was released after having given security for her appearance. Specifications in considerable detail were filed by the Attorney General. After a hearing upon those specifications, an order was entered wherein was recited at length findings of fact of perjury, subornation of perjury and acts in obstruction of justice, and the arrest of the plaintiff in error in open court because of the acts thus committed by her in the presence of the trial judge, notice to her of hearing on specifications of contempt, and the adjudication of guilty and sentence to jail for six months unless sooner released by the court. The recital as to the notice and hearing is that after her arrest specifications were filed of which the plaintiff in error had due notice, and that she appeared and offered herself as a witness in her own behalf voluntarily and was examined by her own counsel and cross-examined by an

Assistant Attorney General, and that she was fully heard in her defence by herself and by counsel. Thereafter the adjudication was made. The findings of fact recited in the order in substance are that (1) the plaintiff in error did delay the proceedings of the court, obstruct justice, and commit acts against the dignity and authority of the court in that she wilfully asserted that she was the daughter of said Lotta M. Crabtree, which was a false and fraudulent claim of kinship, and that in support of the claim she knowingly testified falsely and untruthfully and caused false testimony of another to be given; (2) she testified that she had traveled in company with said Crabtree at specified times and places, whereas it appeared upon unquestioned, incontrovertible and contemporaneous documentary evidence consisting of court records and writings of the decedent that said testimony was false and that said Crabtree was not at the places at the times stated; (3) she testified with great particularity as to intimate and personal and private relationships with said Crabtree through a period of about twenty-four years; and (4) when shown an unquestioned, autographed photograph of said Crabtree she could not tell whose likeness it was and did not identify other genuine photographs of said Crabtree, but made it clearly manifest that she had no intimate and personal companionship with said Crabtree; (5) her testimony as to intimate acquaintance and close association with said Crabtree was obviously a sham and pretense of events that never took place and a manifest effort by means of persistent perjury to baffle the inquiry then being made by the court; (6) she caused false testimony in her behalf to be offered in her presence to the effect that a certain entry on a flyleaf of a bible was in the handwriting of said Crabtree and she testified that prior to learning of said bible entry in March, 1925, she did not know or suspect any such relationship between herself and said Crabtree; and in order to make said bible entry admissible as evidence, she brought from Iowa and offered a witness in her behalf to testify wilfully and corruptly in substance that said bible entry was in the handwriting of said Crabtree and thereafter, when the falsity thereof

was ascertained, she permitted her counsel, in her presence and the presence of the court, to disclaim that the writing upon the bible flyleaf was the handwriting of said Crabtree as testified, and it was manifest from her actions and demeanor in the presence of the court that she well knew that the testimony so caused by her to be given was false; (7) the plaintiff in error was a woman of mature years, intelligent, alert and adroit, and that in testifying as aforesaid she committed persistent and wilful perjury and was actuated by a corrupt purpose; (8) and the court did order the plaintiff in error, because of such acts committed as aforesaid in the presence of the court, "of which the court took judicial notice and had judicial knowledge, to show cause why she should not be adjudged in contempt of court."

These findings of facts must be accepted as true. They import a finding of all incidental and inducing facts and the drawing of all permissible inferences necessary to the conclusion reached. *Vinal* v. *Nahant,* 232 Mass. 412, 419. *Royle* v. *Worcester Buick Co.* 243 Mass. 143, *New Bedford Cotton Waste Co.* v. *Andres Co.* 258 Mass. 13, 17. And it must be presumed that all these findings were made beyond a reasonable doubt in the mind of the trial judge. *Root* v. *MacDonald,* 260 Mass. 344, 366, 367.

An underlying contention of the plaintiff in error is that these facts as found by the court do not constitute contempt of court. Concerning argument in support of that contention when the case was here before, it was said that that question was not then reported for our determination and that it was not necessary to say more than that in our opinion it could not be ruled as matter of law on the facts found, either that there was no contempt or that there was error in the proceedings. 260 Mass. at pages 375, 376. That question is now presented for decision. Perjury as a ground for contempt of court has not been hitherto much discussed in our decisions.

The province of the courts in cases brought before them is to ascertain the truth, to vindicate rights, to redress wrongs and to do justice according to established principles of law.

Those who are interested in perverting rights and escaping the consequences of evil conduct, have an interest to obstruct the course of justice in the courts. Ingenious efforts have not been wanting for obstructing the courts by numerous means. An obvious one is to attempt to influence the decisions by false testimony. Perjury as contempt of court has been considered by courts of other jurisdictions. Respecting that general subject it was said in *Ex parte Hudgings*, 249 U. S. 378, at pages 382, 383: "Because perjury is a crime defined by law and one committing it may be tried and punished does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject-matter of a punishment for contempt. For an application of this doctrine to perjury, see *Berkson* v. *People*, 154 Illinois, 81; *In re Rosenberg*, 90 Wisconsin, 581; *Stockham* v. *French*, 1 Bing. 365; and see *In re Schulman*, 177 Fed. Rep. 191; *In re Steiner*, 195 Fed. Rep. 299; *In re Ulmer*, 208 Fed. Rep. 461; *United States* v. *Appel*, 211 Fed. Rep. 495. This being true, we must ascertain what is the essential ingredient in addition to the elements constituting perjury under the general law which must be found in perjury when committed in the presence of a court to bring about the exceptional conditions justifying punishment under both. Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial generally safeguarding the rights of the citizen. This, however, expresses no purpose to exempt judicial authority from constitutional limitations, since its great and only purpose is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured. *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402; *Marshall* v. *Gordon*, 243 U. S. 521. An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This be-

ing true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted — a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. As illustrative of this, see *United States* v. *Appel*, 211 Fed. Rep. 495."

It is not necessary to analyze this decision or to delimit its scope or to determine instances under its doctrine where perjury does not constitute an obstruction to the court in the performance of its duty. See *Matter of Sleeper*, 251 Mass. 6, 17. There is much more shown on this record than mere perjury of an ordinary witness: it was beyond doubt perjury under exceptional conditions with added elements of obstruction to the court. The plaintiff in error was a moving party in this aspect of the litigation. She was seeking without justification to interject herself as a party into litigation concerning the proof of a will by knowingly and wilfully asserting a false claim to be a daughter of the alleged testatrix. Many days of the time of the court and of other actual parties had been consumed in hearings on that point. The judge made findings as to the means of proof put forward by her and other measures taken by her in support of such fraudulent claim, which have been narrated. The merits of these findings cannot be retried in this proceeding. The reasonable tendency of the acts done is the test whether they constitute contempt of court. Perjury and conduct of the nature found by the trial judge manifestly constitute plain obstruction to the performance of judicial duty and flagitious interference with the course of justice.

The contention that the trial judge erred because his findings were based on collateral inquiry and could have been made only by weighing conflicting evidence cannot be supported. The evidence on which the findings were made is no part of this record. We do not know what it was. The judge states that he found certain facts importing

contempt of court "upon unquestioned, incontrovertible, and contemporaneous documentary evidence, consisting of court records and of writings of the decedent." He saw the witnesses and observed their appearance both while testifying and while before him. To this end he was at liberty to decide whether the plaintiff in error had committed perjury in testifying before him and to use his decision thus reached in connection with the other material factors. Even if the trial judge regarded the perjury of the contemnor peculiarly flagrant in nature, there is no reason in law why this finding may not have been given weight with the other facts. Plainly he had a right to use his knowledge of human nature and his judicial experience in determining the character of the testimony given at the hearing in conjunction with all other facts coming to his knowledge in order to decide the ultimate question whether the plaintiff in error was guilty of contempt. This contention, whether directed at the findings or at the method by which they were reached, fails in this proceeding.

This aspect of the case at bar on the record is free from error on the authority of the supporting decisions already quoted from the opinion in the Hudgings case and of other decisions. *In re Kaplan Bros.* (C. C. A.) 213 Fed. Rep. 753. Certiorari denied *sub nomine, Kaplan* v. *Leech,* 234 U. S. 765. *Davidson* v. *Wilson,* (C. C. A.) 286 Fed. Rep. 108. *Haimsohn* v. *United States,* 2 Fed. Rep. (2d) 441. *United States* v. *Karns,* 27 Fed. Rep. (2d) 453. *United States* v. *Dachis,* 36 Fed. Rep. (2d) 601. *Edwards* v. *Edwards,* 87 N. J. Eq. 546. *Sachs* v. *High Clothing Co.* 90 N. J. Eq. 545. *Ex parte Fernandez,* 30 L. J. C. P. 321, 332, 340, 341. *Matter of Sleeper,* 251 Mass. 6, 19.

The plaintiff in error further contends that her arrest was illegal since no warrant or other process issued or was served upon her. The contempt here in issue and already described was direct. It was committed in the very presence of the court. In these circumstances no warrant was necessary. The arrest rightly might be made upon the oral direction of the presiding judge. It was said by Knowl-

ton, C.J., in *Hurley* v. *Commonwealth*, 188 Mass. 443, at
page 446: "If a contempt is committed in the presence of the
judge, no complaint or process is necessary to give the court
jurisdiction of the offender, but the court may act upon
its judicial knowledge, and the contemnor may be taken
into custody at once." This method of procedure is not
denial of due process of law but in strict accordance with
every principle of due process of law. *Ex parte Terry*, 128
U. S. 289, 313. *McGrain* v. *Daugherty*, 273 U. S. 135,
157–158. *Middlebrook* v. *State*, 43 Conn. 257, 268–269.
*In re Willis*, 94 Wash. 180. The conspiracy which formed
a part of the contempt was operative up to the moment of
arrest. The conduct of the plaintiff in error constituted a
course of action of which each element was an integral
part. The plaintiff in error, having been rightly taken into
custody, the judge might have proceeded to deal with the
matter at once and summarily. But it was manifestly
within the power of the trial judge to continue the matter
for hearing to a future date and compel the plaintiff in
error to give security for her appearance. The plaintiff in
error having been rightly arrested, the specifications might
cover any appropriate allegations of contempt. Every
procedure necessary for prosecution for indirect contempt
was thereafter taken. This method of procedure was not
open to legal objection. The causing of specifications to be
filed and affording the plaintiff in error time to prepare her
defence and giving her full opportunity to ·be heard with
the assistance of counsel were factors indicative of judicial
solicitude that nothing should be done in haste, but that
all things should be done in order and with every in-
ducement for a deliberate conclusion and a right decision.
Instead of transcending, the trial judge acted well within,
his power in all preliminary proceedings. A fine sense
of judicial propriety seeking jealously to guard every
right of the plaintiff in error was manifested through-
out.

Whether the general appearance of the plaintiff in error
and the failure to raise any specific objection to the juris-

diction of the court in the hearing on the specifications were waiver of this contention, need not be considered because, treating it on its merits, no error is disclosed. See *Commonwealth* v. *McNary*, 246 Mass. 46, 48.

The contention that there was error in refusing to permit the plaintiff in error under the guidance of new counsel to examine exhibits by a handwriting expert presented during the trial, cannot rightly be supported. That was at most a matter within sound judicial discretion. These exhibits had all been presented during the trial and their genuineness then doubtless was in issue. Whether the ground should be covered at the later stage was for the judge to determine. Moreover, it well may be that the pertinency of this requested procedure upon the issue of contempt seemed too remote, if not incompetent, in the light of the judicial knowledge of the trial judge. See *Pepper* v. *Old Colony Trust Co.* 268 Mass. 467, 469.

The plaintiff in error complains that the trial judge relied upon his judicial memory of what had occurred and that this was not specifically called to her attention. There is no merit in this. Proceedings for contempt are *sui generis* not hedged about with provisions to be observed in prosecutions for crime under complaints or indictments. Where, as here, the contempt was direct and in the presence of the court, the trial judge rightly may act upon his judicial knowledge of facts constituting contempt. *Hurley* v. *Commonwealth*, 188 Mass. 443, 446. *Ex parte Grossman*, 267 U. S. 87, 117–118.

She also assigns as error that the trial judge refused to allow her "to read into the record" of her trial for contempt the testimony of witnesses heard at the trial on the motion to strike out her appearance. Even if the highly doubtful assumption be made that this point is open on this record, 260 Mass. at page 377, there was no error. All this evidence had been received in the very trial in which the contempt was committed and was within the judicial knowledge of the trial judge. If such proceedings as here are urged were permissible, trials for contempt would no longer be summary and speedy punishment for the insult to justice, which is

the essence of contempt, would cease.   See also *Sinclair* v. *United States,* 279 U. S. 749, 767.

There is no merit in the contention that there was error in denial of the motion to strike out certain specifications. The specifications, although detailing certain matters not occurring in the actual presence of the court, in effect related to a single scheme having its fruition in what occurred in the presence of the trial judge.   It already has been pointed out that the arrest of the plaintiff in error for direct contempt was legal.   Even if it be assumed that certain specifications related to matters susceptible of being treated as indirect contempt, every requirement for procedure in cases of indirect contempt was thereafter followed, viz., specifications, notice, time for defence, and full hearing with aid of counsel.

The motion that the hearing of the contempt charges be remanded to some other judge of the court was denied rightly.   This motion was based on alleged bias and prejudice manifested by the trial judge in his written statement and order to show cause.   Examination of this statement fails to disclose any element of unfairness toward the plaintiff in error.   Its language is severe.   But it bears no trace of resentment, or anger, or other unjudicial attitude.   The contempts set forth were in no sense personal to the trial judge.   The case at bar is different in every particular from the situation disclosed in *Cooke* v. *United States,* 267 U. S. 517.   The statement manifests no heat and no temper and no want of judicial poise.   Its rigor of expression is founded on deep conviction of the commission of a public wrong. It was said in *United States* v. *Shipp,* 203 U. S. 563, 574, that to a proceeding for contempt the "court is not a party. There is nothing that affects the judges in their own persons. Their concern is only that the law should be obeyed and enforced, and their interest is no other than that they represent in every case."   There was every practical reason why the hearing should not be transferred to another judge.   It would result in needless retaking of testimony at great length.   Another judge would not possess the advantage of having observed the witnesses and their demeanor at the

original hearings. The fundamental conception of contempt of court is that the judge, in whose presence it occurs, is best fitted to pass upon it, save in exceptional cases. *Hurley* v. *Commonwealth*, 188 Mass. 443, at page 444. The record is plain that there was no disqualification of the trial judge in the case at bar. See *Dittemore* v. *Dickey*, 249 Mass. 95, 100; *Dugan* v. *Ohio*, 277 U. S. 61.

The plaintiff in error has argued that some constitutional right has been impaired. She was arrested and taken into custody in conformity to settled principles of law; she was given fair notice of the charges against her; she was accorded a full hearing. There was compliance with every provision of arts. 12 and 29 of the Declaration of Rights of the Constitution of this Commonwealth, which she invokes. *Cartwright's Case*, 114 Mass. 230, 238. *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, 298. *Hurley* v. *Commonwealth*, 188 Mass. 443. *Root* v. *MacDonald*, 260 Mass. 344, 365–367.

She also urges that the due process of law clause of the Fourteenth Amendment to the Constitution of the United States has been violated to her harm. We think that there is no merit in this argument. Every conceivable constitutional right in this particular was sedulously guarded by the trial judge. She was given ample specifications of all charges against her and adequate notice to prepare her defence; she was granted full hearing with opportunity to present her case with the aid of counsel of her own choosing before a fair and impartial tribunal; all in conformity to practice established in such proceedings. Every essential element of due process of law was observed. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 127. *Ex parte Hudgings*, 249 U. S. 378, 383. *Sinclair* v. *United States*, 279 U. S. 749. *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402, 416–421. *Michaelson* v. *United States*, 266 U. S. 42, 65. *Cooke* v. *United States*, 267 U. S. 517, 534–539. *Twining* v. *New Jersey*, 211 U. S. 78, 100–102. *Brinkerhoff-Faris Trust & Savings Co.* v. *Hill*, 281 U. S. 673.

Every contention put forward in behalf of the plaintiff in error has been considered. It is not necessary to state in

detail the assignments of errors or the requests for rulings of the plaintiff in error. They are all covered in substance by what has been said. Further discussion is not required. No error is disclosed.

*Judgment affirmed.*