RAANAN KATZ *vs.* COMMONWEALTH & others.[1]

Suffolk.  September 12, 1979. — December 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Contempt.  Housing Court Department.  Error, Writ of.  Perjury.  Constitutional Law,* Self-incrimination, Speedy trial.  *Practice, Criminal,* Presence of defendant, Recording of proceedings.

The Supreme Judicial Court treated a petition by a landlord for a writ of error, filed in the county court before the repeal on July 1, 1979, of statutory writs of error to review criminal judgments, and seeking review of "Findings of Fact, Conclusions of Law, and Order for Judgment" of a Housing Court arising out of a consolidation of a summary process action and an action for unpaid rent against tenants which culminated in contempt of court charges against the landlord, as having the same scope as an appeal which could have been taken to the Appeals Court in the civil cases, and the Supreme Judicial Court reviewed both the civil features and the criminal features of the sentence imposed by the Housing Court on the landlord [309-312]; with respect to the criminal aspects the Commonwealth was treated as the adverse party, rather than the Housing Court or its judges [312].
A private citizen may prosecute a purely criminal complaint in a Housing Court. [312]
Motions by a tenant in a proceeding in a Housing Court that the landlord be held in contempt for not complying with court orders to answer interrogatories and to produce documents, and for perjury in answers ultimately given, followed by the judge's orders requiring the

---

[1] Mary Saunders and John Lynch (tenants).

landlord to show cause, gave him sufficient notice that charges against him of criminal contempt were involved [312-313]; the contempts set forth were in no sense personal to the judge and he was not disqualified [313].

This court, upon review of proceedings in a Housing Court recorded on tape, portions of which were inaudible, concluded that the tape brought forth an account of the events sufficient to allow an evaluation of the contentions of a party. [313]

The record in a proceeding in a Housing Court disclosed no basis for a contention by a landlord that his privilege against self-incrimination was violated in connection with a subpoena served upon his office manager with a direction to produce certain of the landlord's records, or in connection with a hearing held by the judge on a complaint for criminal contempt against the landlord at which there was no testimony by him. [314]

A landlord was not denied his constitutional right to speedy disposition by a Housing Court of charges against him of criminal contempt of court where it was merely shown that there was a delay following the last of five hearings, at which the judge took the case under advisement, of slightly over four months until he issued his findings, conclusions and order for judgment, which was followed shortly by hearings on motions and an order amending the findings. [314-315]

After hearings by a Housing Court on charges of criminal contempt of court against a landlord, at the last of which his counsel had an opportunity to discuss punishment, there should have been a definitive determination of guilt, followed by an opportunity for the landlord or his counsel to address the matter of sentence, instead of an order which included a jail sentence for criminal contempt and was issued in the absence of the landlord and his counsel; however, the error in sentencing was remedied by resentencing by an amended order issued, after hearings on motions by the landlord at which matters in mitigation were fully explored. [315-316]

Upon a finding by a judge of a Housing Court that a landlord was "guilty of Criminal Contempt of Court beyond any reasonable doubt" by reason of his perjury in an answer to an interrogatory by a tenant in an action, imposition of a jail sentence on the landlord was an appropriate sanction under Mass. R. Civ. P. 37 (b) (2), 365 Mass. 797 (1974); the continued assertion of a false proposition by the landlord after the issue had been sharply focused was relevant to the wilfulness of the contempt. [316-317]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on May 18, 1979.

The case was reported by *Kaplan*, J.

*Leslie H. Rudnick* for the plaintiff.

*John A. Mendlesohn,* Assistant Attorney General, for the Commonwealth.

*Harvey S. Shapiro* for Mary Saunders.

BRAUCHER, J.   Raanan Katz, a landlord, was the plaintiff in two consolidated civil actions in the Housing Court of the City of Boston in which counterclaims were filed.   A judge of that court found that the landlord had repeatedly failed to comply with court orders relating to discovery and had perjured himself in his answer to an interrogatory.   The judge found him guilty of criminal contempt of court, and imposed sanctions.   The landlord sought review by writ of error, and a single justice of this court reported the case to the full court without decision.   We affirm the order and judgment of the Housing Court.

The landlord brought a summary process action in the Municipal Court of the Brighton District against two tenants of an apartment in Brighton, seeking possession and damages for unpaid rent.   He also brought a civil action in the Brookline Municipal Court, seeking damages for unpaid rent in connection with the same premises.   Both actions were transferred to the Housing Court in the spring of 1978, and they were later consolidated.   One of the tenants filed motions to hold the landlord in criminal contempt.   The judge issued orders to show cause, hearings were held, and the matter was taken under advisement at the close of a hearing on December 19, 1978.   On April 24, 1979, the judge filed a document entitled "Findings of Fact, Conclusions of Law and Order for Judgment."   Further motions and hearings resulted in amendments to the judge's findings and postponement of the sentence and fine imposed.

We summarize the judge's findings.   On April 4, 1978, the landlord was served with interrogatories and a notice to produce documents, but he made no timely response.   On June 14, 1978, the judge ordered compliance, but there was none.   On June 30, 1978, the judge ordered compliance within seven days, and on the landlord's failure to comply the judge ordered judgment against the landlord on his

claim for possession and rent. In addition, since the tenants still needed the discovery in connection with their counterclaims, the judge ordered the landlord to produce the documents and answer the interrogatories by August 18, 1978. On motion by one of the tenants and an order to show cause by the judge, contempt hearings were held on August 29 and September 6, 1978.

Among the documents called for were copies of all "records or evidence of payment (i.e., cancelled checks)" pertaining to the provision of fuel to heat the premises in issue after January 1, 1977. The landlord filed a print-out prepared by the company that supplied fuel oil; it showed deliveries to a number of properties but did not specify which deliveries were to the premises in issue. The landlord's response to the notice to produce, filed about August 23, 1978, represented that the print-out was "the only such full and complete record," and a supplementary response filed September 6, 1978, represented that the "invoices and payment receipts (including cancelled checks)" called for "are destroyed shortly after payments are made" and that "there is no record of payment in existence or in his possession" beyond the print-out. The court found this assertion incredible, continued the hearing to October 25, 1978, and ordered the landlord to bring with him designated records. At the October 25 hearing counsel for the landlord produced the cancelled checks in question and asserted that the supplementary response of September 6 had contained a "typographical error": the statement that all records of payment had been destroyed, "including cancelled checks," should have read "excluding cancelled checks." The judge concluded that there had been no "typographical error," and that the landlord deliberately disobeyed three orders to produce the cancelled checks. The judge also found that the landlord had other fuel delivery records in his possession on August 1, 1978, when he made his first fuel payment in five months, that he knew of the orders to produce such records, and that he did not produce them.

On August 28, 1978, the judge ordered the landlord to give full and complete answers within twenty-one days to the interrogatories propounded by the tenants. Answers were filed, and one of the tenants moved that the landlord be held in criminal contempt by reason of perjury in the answers. The judge issued an order to show cause, and a hearing was held on December 15 and 19, 1978. In answer to one of the interrogatories the landlord responded that "all repairs and maintenance" to the heat and hot water plant serving the premises "are performed by Atlas Oil Company." In fact, the judge found, during 1977 and 1978 repairs and maintenance were the responsibility of Peter A. Gianopoulos. The landlord's answer was false and he knew it was false, and it was material to the tenants' defenses and counterclaims.

The judge found that the landlord was guilty of criminal contempt of court beyond any reasonable doubt. Because of the landlord's "ongoing, repeated, blatant and willful defiance of the authority and power of the Court," the judge concluded that "punishment beyond monetary sanctions is in order." He ordered that judgment enter against the landlord on his claim for rent, that he be defaulted with respect to the counterclaims in both actions, and that hearings be scheduled by the clerk on assessment of damages. The judge awarded $2,000 in attorney's fees to counsel for the tenants, to be paid by the landlord within thirty days. He fined the landlord $5,000 and sentenced him to thirty days in the Charles Street jail. As an alternative to the thirty day sentence, the landlord was permitted to elect either (a) incarceration for eleven consecutive weekends, or (b) incarceration from 1 P.M. Friday to 8 A.M. Monday, and manual labor at the Charlestown Development of the Boston Housing Project for two consecutive eight hour days per week for fourteen consecutive weeks. The landlord has elected the latter alternative, but the fine and jail sentence have been stayed pending our decision.

1. *The form and scope of review.* The landlord sought review by writ of error by a petition filed in the county

court. This was in accordance with our decisions in cases of criminal contempt. G. L. c. 250, § 9, repealed by St. 1979, c. 344, § 13, effective July 1, 1979. *Hurley* v. *Commonwealth,* 188 Mass. 443, 445 (1905). See Connors, The Law of Contempt in Massachusetts: An Overview, 63 Mass. L. Rev. 161, 171 (1978). Historically, review by writ of error was subject to severe limitations. *Hansen* v. *Commonwealth,* 344 Mass. 214, 222 (1962), and cases cited. But in modern times there was a "gradual and necessary expansion of the statutory writ of error . . . as a post-conviction remedy broad enough to deal with constitutional problems arising under recent decisions of the Supreme Court of the United States." *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 376 n.9 (1965), and cases cited. The result has been review of criminal contempt cases by writ of error comparable in scope to review of other cases by appeal, bill of exceptions, or even appeal from denial of a motion for new trial. See *Sussman* v. *Commonwealth,* 374 Mass. 692, 701-702 (1978), and cases cited.

"Questions of law arising out of the trial of civil contempts, so called, have been frequently presented to this court by a report." *New England Novelty Co.* v. *Sandberg,* 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944), and cases cited. In *Godard* v. *Babson-Dow Mfg. Co.,* 319 Mass. 345, 348 (1946), we held that a final decree in contempt proceedings was appealable like other final decrees in equity where the contempt consisted of disobedience to a final decree in equity "and was dealt with civilly and in no respect criminally." Where no issue has been made with respect to the review procedure, we have reviewed contempt adjudications much like the present one by appeal rather than by writ of error. *Nickerson* v. *Dowd,* 342 Mass. 462, 465 (1961). See *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. 692, 696 n.4 (1978). Indeed, "Massachusetts law has long refused to distinguish rigidly between the civil and criminal aspects of contempt of court. . . . A sentence for contempt in Massachusetts may be 'partly remedial and partly punitive, partaking both of civil and criminal features.'" *Matter of De-*

*Saulnier (No. 3)*, 360 Mass. 769, 772 (1971), quoting *Root* v. *MacDonald*, 260 Mass. 344, 363 (1927).

When the Housing Court of the City of Boston was established, effective January 1, 1972, appellate review of its decisions was to be had directly by this court. G. L. c. 185A, § 26, inserted by St. 1971, c. 843, § 1. *Commonwealth* v. *Haddad*, 364 Mass. 795, 797 (1974). Cf. *Commonwealth* v. *Olivo*, 369 Mass. 62, 65-66 (1975) (Housing Court of the County of Hampden). Later amendments provided for appeal to the Appeals Court instead. G. L. c. 185A, § 26, as amended by St. 1973, c. 1114, § 41, repealed by St. 1974, c. 700, § 17. G. L. c. 185A, § 24, as amended by St. 1974, c. 700, § 16, and St. 1975, c. 667, § 2. The repeal of those provisions and the substitution of G. L. c. 185C by St. 1978, c. 478, §§ 91, 92, were not intended to make any change in this respect. Cf. G. L. c. 231, § 113, as appearing in St. 1973, c. 1114, § 202, relating to civil appeals.

Effective July 1, 1979, the statute providing for writs of error to review criminal judgments was repealed; thereafter criminal as well as civil appeals are subject to the Massachusetts Rules of Appellate Procedure. St. 1979, c. 344, § 13. St. 1979, c. 346. Mass. R. A. P. 1 (a), as amended, 378 Mass. 924 (1979). The Massachusetts Rules of Criminal Procedure took effect at the same time, and provide for proceedings relating to criminal contempts in the District Courts and the Superior Court. As to such contempts, the contemnor's only right of appeal is to the Appeals Court. Mass. R. Crim. P. 43, 44, 378 Mass. 919, 920 (1979). But those rules have not been made applicable to criminal proceedings in the Housing Courts. Mass. R. Crim. P. 1 (b), 378 Mass. 842 (1979).

The parties have not presented to us any issue with respect to the mode of review, but their arguments have evidenced sufficient confusion on the subject to warrant a pronouncement by the court. When handling appeals in progress on July 1, 1979, Mass. R. A. P. 1B (5) provides that we shall interpret and construe the rules, as amended, "in such manner as will, by the exercise of sound judicial discretion, ensure justice." 378 Mass. 924, 927. To that end, we treat

the writ of error as having the same scope as an appeal to the Appeals Court in the civil case out of which the contempt charges arose. The sentence under review partakes of both civil and criminal features, and we review both. Such an appeal to the Appeals Court will be appropriate if a similar case should arise after July 1, 1979. But we do not foreclose the possibility that a purely criminal contempt might be prosecuted by complaint or indictment and proceed as a separate criminal case, subject to appeal as a criminal case. See Mass. R. Crim. P. 44 (a).

Traditionally the Commonwealth has been the respondent in proceedings to review criminal contempts by writ of error. Here the petitioner treated the judges of the Housing Court and the tenants as respondents, and an assistant attorney general appeared on behalf of the judges. In some circumstances judges or their court may be made nominal parties as a method of seeking review of a judicial decision, but it is clear with respect to the criminal aspects of the present case that the Commonwealth, rather than the Housing Court or its judges, is the adverse party, and we so treat it. See *Fadden* v. *Commonwealth*, 376 Mass. 604, 608-609 (1978), cert. denied, 440 U.S. 961 (1979). Cf. *Commonwealth* v. *Haddad*, 364 Mass. 795, 798-799 (1974).

2. *Contempt procedure.* The power of a Housing Court to punish for contempt is confirmed by statute. G. L. c. 185C, § 3. "In numerous contempt cases a sentence has been imposed partly remedial and partly punitive, partaking both of civil and criminal features." *Root* v. *Mac-Donald*, 260 Mass. 344, 363 (1927). Private parties to civil litigation have the right "to press both the civil and criminal aspects of the case." *Id.* at 365. See *Stow* v. *Marinelli*, 352 Mass. 738, 745 (1967). Contrary to the landlord's contention, a private citizen may prosecute a purely criminal complaint in a Housing Court, as in a District Court. G. L. c. 185C, § 19. *Commonwealth* v. *Haddad*, 364 Mass. 795, 798 (1974).

Technical accuracy of pleading has not traditionally been required in contempt cases, but the alleged contemnor

should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. *Woodbury* v. *Commonwealth,* 295 Mass. 316, 323 (1936). If the case is treated as a criminal case, G. L. c. 185C, § 19, provides for proceedings commenced "by complaint in like manner as in the district court department." Cf. G. L. c. 263, § 4; Mass. R. Crim. P. 44 (a) (criminal contempt in District and Superior Courts). However that may be, we think the tenant's motions, followed by the judge's orders to show cause, gave the landlord sufficient notice of the charges against him and sufficiently warned him that charges of criminal contempt were involved. See *Sodones* v. *Sodones,* 366 Mass. 121, 130 (1974).

The contempts set forth were in no sense personal to the judge. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 453 (1943). Hence he was not disqualified on the ground that the nature of the alleged contemptuous conduct was such as was likely to affect his impartiality. See Mass. R. Crim. P. 44 (c) (criminal contempt in District and Superior Courts). Cf. *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 466 (1971) ("highly personal aspersions, even 'fighting words'").

3. *Defective tape recording.* The proceedings in the Housing Court were recorded on tape. Portions of the tape are inaudible, and the landlord claims that no "proper recording system" was provided, as required by G. L. c. 185C, § 18. The proceedings were not subject to G. L. c. 278, § 33A, repealed by St. 1979, c. 346, § 1, which required stenographic recording for trials of felonies or misdemeanors tried with felonies. See *Charpentier* v. *Commonwealth,* 376 Mass. 80, 85 (1978). The landlord did not exercise his right to employ a private stenographer. See G. L. c. 221, § 91B; *Commonwealth* v. *Shea,* 356 Mass. 358, 360-361 (1961); cf. *Blazo* v. *Superior Court,* 366 Mass. 141, 146-154 (1974) (right of indigent defendant). We have reviewed the tape, and conclude that it brings before us an account of the events sufficient to allow us to evaluate the landlord's contentions. More is not required. *Commonwealth* v. *Harris,* 376 Mass. 74, 77-78 (1978). Cf. *Commonwealth* v. *Richards,* 369 Mass. 443, 451 (1976).

4. *Self-incrimination.* The landlord contends that his privilege against self-incrimination was violated in two respects. First, his office manager was served with a subpoena and directed to produce certain of the landlord's records. Second, it is claimed that the landlord was called as a witness at the hearing on December 19, 1978. Neither contention is supported by the record.

No evidence in the record is identified to us as evidence produced by the office manager. It does not appear that there was any claim of the privilege against self-incrimination in connection with any such evidence. There was no attempt to enforce the subpoena against the landlord, and he was not asked to identify any documents produced by the office manager. We are unable to find any basis for the contention that the landlord's privilege against self-incrimination was violated in connection with the subpoena. See *Fisher* v. *United States,* 425 U.S. 391, 399-401 (1976).

The record discloses no testimony by the landlord on December 19, 1978, and the judge found that there was no such testimony. It would have been improper to call him as a witness against himself. G. L. c. 233, § 20, Third. See *Meranto* v. *Meranto,* 366 Mass. 720, 724 (1975); *Root* v. *MacDonald,* 260 Mass. 344, 367 (1927). But no such impropriety is disclosed. The landlord did testify without objection on August 29 and October 25, 1978, but no error is claimed in that regard.

5. *Delay.* Hearings were held on the contempt charges on August 29, September 6, October 25, and December 15 and 19, 1978. At the final hearing, the judge said, "I'll take the case under advisement and you will be notified of my decision." He issued his findings, conclusions and order for judgment on April 24, 1979. A number of motions were heard on May 7 and 9, 1979, and an order amending the findings was issued May 11, 1979. The landlord argues that he has been denied his constitutional right to speedy disposition of the criminal charge, citing *Barker* v. *Wingo,* 407 U.S. 514 (1972).

We assume that the right to speedy trial under the Sixth Amendment to the United States Constitution and under

art. 11 of our Declaration of Rights extends to speedy disposition. *United States* v. *Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976), cert. denied, 434 U.S. 851 (1977). Cf. G. L. c. 279, § 3A, providing that a district attorney shall move for a felony sentence not later than seven days after plea or verdict; Mass. R. Crim. P. 28 (b), 378 Mass. 898 (effective July 1, 1979), providing for sentence without unreasonable delay. But the length of the delay in the present case was far less than in other cases in which we have held that the right was not infringed. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 331-333 (1977). Compare the time periods established by Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979). There is no showing of lack of diligence on the part of a prosecutor, no showing that the landlord asserted his right to a speedy trial, and no showing of prejudice from the delay. There was no pretrial incarceration. See *Commonwealth* v. *Gilbert*, 366 Mass. 18, 22-23 (1974); *Commonwealth* v. *Gove*, 366 Mass. 351, 360-361 (1974). We think the argument fails.

6. *Presence at sentencing.* The judge's order of April 24, 1979, included a jail sentence for criminal contempt, and was issued in the absence of the landlord and his counsel. We need not consider the apparently unsettled question whether a criminal defendant has a constitutional right to be present at his sentencing. See *Thompson* v. *United States*, 495 F.2d 1304, 1306-1307 n.5 (1st Cir. 1974). It seems clear that he has a constitutional right to have counsel present. *Mempa* v. *Rhay*, 389 U.S. 128, 134 (1967). *Osborne* v. *Commonwealth*, 378 Mass. 104, 114 (1979). In any event, we think our decisions make it clear that there is a common law right to be present at trial, including sentence. See *Commonwealth* v. *Robichaud*, 358 Mass. 300, 302 (1970); *Commonwealth* v. *Millen*, 289 Mass. 441, 452-453, cert. denied, 295 U.S. 765 (1935). Cf. G. L. c. 278, § 6, repealed by St. 1979, c. 344, § 43; Mass. R. Crim. P. 28 (b) (effective July 1, 1979).

We do not agree with counsel for the tenant that the opportunity of counsel for the landlord to discuss punishment

on December 19, 1978, satisfied the landlord's right. We do not criticize the judge for taking time to consider the case and to prepare findings and conclusions. But we think there should have been a definitive determination of guilt, followed by an opportunity for the landlord or his counsel to address the matter of sentence; "only at the final sentencing can the defendant respond to a definitive decision of the judge." *United States* v. *Behrens,* 375 U.S. 162, 168 (1963) (Harlan, J., concurring).

But the remedy for an error in sentencing is not dismissal or new trial, but resentencing. *Osborne* v. *Commonwealth,* 378 Mass. 104, 114-115 (1979). See *Pollard* v. *United States,* 352 U.S. 354, 361-362 (1957). And that remedy has been fully afforded to the landlord. Hearings on his motion to vacate, motion for stay and motion for new trial were held on May 7 and 9, 1979, matters in mitigation were fully explored, and an amended order was issued.

7. *The punishment.* Under Mass. R. Civ. P. 37 (b) (2), 365 Mass. 797 (1974), sanctions are provided for wilful failure to obey an order to provide discovery, including treatment of the failure as a contempt of court. An adjudication for criminal contempt is an appropriate sanction. See *Southern Ry.* v. *Lanham,* 403 F.2d 119, 125 (5th Cir. 1968). Perjury may be punished as contempt when it obstructs the court in the performance of its duty. *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 31-34 (1930). The contempt power is not cut down or affected by G. L. c. 268, § 4. *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 377 (1927). There is nothing in *Inmates of Suffolk County Jail* v. *Kearney,* 573 F.2d 98 (1st Cir. 1978), to support the landlord's assertion that the sentence subjects him to cruel and unusual punishment.

One of the charges against the landlord was that he wilfully swore falsely with respect to his answer to interrogatory number 8. The judge found that he had perjured himself "in his answer to interrogatory number eight and in his testimony before this Court" on the same subject. The landlord now argues that he has been found guilty of per-

jured testimony before the court, an offense not charged. But we read the quoted finding as merely preliminary to the next sentence: "Therefore, I find Raanan Katz guilty of Criminal Contempt of Court beyond any reasonable doubt." We think the continued assertion of a false proposition after the issue of its falsity had been sharply focused was relevant to the wilfulness of the contempt. Moreover, the judge could properly take it into account in determining the appropriate sanction. *United States* v. *Grayson,* 438 U.S. 41, 53-54 (1978).

8. *Other issues.* We have considered the other contentions made by the landlord, and in view of their lack of merit we see no need to discuss them.

*Order and judgment affirmed.*