JOSEPH A. BLAZO *vs.* SUPERIOR COURT.
RAPHAEL LOPEZ *vs.* COMMONWEALTH.

Suffolk. May 8, 1974. — August 5, 1974.

Present: TAURO, C.J., REARDON, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Expenses in criminal proceedings, Attendance of witnesses, Transcript of evidence, Recording of proceedings, Stenographer. *Constitutional Law,* Due process of law, Equal protection of laws, Expenses in criminal proceeding. *Attorney at Law.*

Apart from G. L. c. 277, § 66, a defendant in a criminal case has a right under the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution to process to summon witnesses at public expense, upon a showing to the competent judge, ex parte if the defendant so desires and through a procedure outlined by this court, that he is indigent and that the witnesses to be summoned are necessary to his defence. [144-146]
A defendant in a misdemeanor session of the Superior Court at which a court appointed stenographer is not present, on proof of inability by reason of indigence to avail himself of the right afforded by G. L. c. 221, § 91B, to have the proceedings taken by a stenographer at his own expense, is entitled to have a stenographer attend and record the proceedings at public expense upon a responsible, good-faith representation by counsel that a verbatim record is needed to protect the defendant's rights. [146-149]
Outline of principles to be applied and procedures to be followed upon an application of an indigent defendant convicted at a criminal trial for a free transcript of all or part of the stenographic record of the trial in order that he may exercise effectively his right to appellate review. [153-154]

Two PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on February 12, 1974.

The cases were reserved and reported by *Wilkins, J.,* without decision.

*Lucien Wulsin, Jr.* (*Michael Feldman* with him) for Joseph A. Blazo.

*Harvey M. Pullman* (*Paul S. Waickowski* with him) for Raphael Lopez.

*Robert V. Greco,* Assistant Attorney General, for the Commonwealth.

KAPLAN, J.    The first above entitled case is a petition by Joseph A. Blazo for certiorari, lodged in the county court, to correct alleged errors committed at a misdemeanor session of the Superior Court. A single justice of our court reserved and reported the matter to the full bench, the basic facts having been reduced by the parties to a statement of agreed facts.

Blazo had been found guilty in the Municipal Court of the City of Boston of begetting and nonsupport (G. L. c. 273, §§ 11, 15). He took his appeal under G. L. c. 278, § 18, for trial de novo by a jury of twelve at a misdemeanor session of the Superior Court, usually presided over by a judge of a District Court sitting by special assignment. Before trial, Blazo applied on the ground of his indigence to the assigned judge for an order providing for blood grouping tests under G. L. c. 273, § 12A, without cost to himself. The motion was granted. Blazo applied also (1) to have summonses served and other steps taken to secure the attendance at trial of persons alleged to be needed as witnesses on his behalf, and (2) to have a stenographer appointed to record the proceedings in the misdemeanor session, both to be without cost to him. The judge denied the two motions and declined to report the questions involved under the procedure of G. L. c. 278, § 30A. Blazo has therefore proceeded on these points by petition for certiorari (G. L. c. 249, § 4, prior to amendment by St. 1973, c. 1114, § 289, effective July 1, 1974).

The second above entitled case raises only question (2), that of stenographic recording. Raphael Lopez, convicted in the Municipal Court of the Roxbury District of unlawful possession of heroin (G. L. c. 94C, §§ 31, 34) and of a hypodermic needle and syringe (§§ 27, 38), took his appeal to the misdemeanor session of the Superior Court for a trial

de novo and as an indigent moved for a stenographer. The motion was denied by a District Court judge sitting by special assignment. Thereupon Lopez brought a petition in the county court under the "superintendency" statute (G. L. c. 211, § 3), and this matter also was reserved and reported by the single justice on a statement of agreed facts.[1]

Pertinent to both questions presented here, and discussed in the briefs, are the "Transcript Cases" commencing with *Griffin* v. *Illinois,* 351 U. S. 12 (1956).[2] These have to do for the most part with the provision of free transcripts (or reasonable substitutes) to indigents appealing from criminal convictions. They are a working out of the general constitutional principle that "[i]n criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color" (*id.* at 17, plurality opinion of Black, J.), so that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt* v. *North Carolina,* 404 U. S. 226, 227 (1971). As more recently stated, while the Constitution does not require a State to equalize economic conditions, "[i]t does require that the state appellate system be 'free of unreasoned distinctions,' *Rinaldi* v. *Yeager,* 384 U. S. 305, 310 (1966), and that indigents have an adequate opportunity to present their claims fairly within the adversarial system." *Ross* v. *Moffit,* 417 U. S. 600, 612 (1974).[3]

---

[1] The Commonwealth has not objected to the use of certiorari or the "superintendency" power in the special situations at bar.

[2] Other cases in the series are: *Eskridge* v. *Washington State Bd. of Prison Terms and Paroles,* 357 U. S. 214 (1958); *Lane* v. *Brown,* 372 U. S. 477 (1963); *Draper* v. *Washington,* 372 U. S. 487 (1963); *Long* v. *District Court of Iowa in and for Lee County,* 385 U. S. 192 (1966); *Roberts* v. *LaVallee,* 389 U. S. 40 (1967); *Gardner* v. *California,* 393 U. S. 367 (1969); *Williams* v. *Oklahoma City,* 395 U. S. 458 (1969); *Wade* v. *Wilson,* 396 U. S. 282 (1970); *Mayer* v. *Chicago,* 404 U. S. 189 (1971); *Britt* v. *North Carolina,* 404 U. S. 226 (1971). Though centering on the right of indigents to counsel, *Douglas* v. *California,* 372 U. S. 353 (1963), and *Ross* v. *Moffit,* 417 U. S. 600 (1974), discuss also the question of transcripts.

[3] The cases look both to due process and equal protection.
For a statement by Mr. Justice Harlan of the transformation, as he saw it, of equal protection and due process notions brought about by the requirement that

1. *Attendance of witnesses.* To turn to the first issue, the expenses involved in securing the attendance of a witness on the part of a defendant in a criminal proceeding consist of the fees of the officer serving the process and fees to the witness for travel and attendance. G. L. c. 233, §§ 2-3; c. 262, §§ 8 (B) (3), 29.[4] There is no statute relieving a defendant of these costs in case of his inability to pay them except G. L. c. 277, § 66, a statute of venerable origin[5] stating that a prisoner indicted for a crime punishable by death or imprisonment for life shall on demand have process at the expense of the Commonwealth to summon witnesses necessary to his defence.[6] This, indeed, is apparently without regard to proof of indigence.[7]

Despite the lack of statutory authority for casting the costs of necessary witnesses in the lesser prosecutions on the public when the defendants are without resources, the Commonwealth does not argue that that relief is unavailable when necessity and indigence are shown. Such a position would be hard to maintain because it has been settled since *Commonwealth* v. *Possehl,* 355 Mass. 575 (1969), which invoked the Transcript Cases, that an indigent defendant can secure blood grouping tests at public expense — the judge below recognized the proposition in granting Blazo's motion for that purpose — and it would hardly be possible to distinguish the demand for attend-

---

the States must in certain events provide free transcripts to indigent defendants, see his dissenting opinion in *Griffin* v. *Illinois, supra,* 351 U. S. at 29 (1956). See also his dissent in *Douglas* v. *California,* 372 U. S. 353, 360 (1963).

[4] Under G. L. c. 233, § 2, fees to the officer for serving the process may be saved through the use of a "disinterested person" to make service.
Blazo averred that his witnesses would not appear unless served and paid in accordance with the statutes.

[5] See *Commonwealth* v. *Williams,* 13 Mass. 501 (1816); Rev. Sts. (1836) c. 136, § 23.

[6] Under G. L. c. 277, § 69, witnesses summoned on behalf of the Commonwealth are required to attend without payment of fees, but the court may make an appropriate order if it finds they are unable to defray expenses.

[7] No argument is made that because a defendant in a capital case has free process for witnesses, it follows constitutionally that the same must be provided for defendants charged with lesser offences. See *Griffin* v. *Illinois, supra,* 351 U. S. at 21 (1956) (concurring opinion of Frankfurter, J.).

ance of witnesses from a demand for blood testing. General Laws c. 273, § 12A, states that in paternity matters the court on defendant's demand shall order blood grouping tests of the mother, child, and defendant. In the *Possehl* case we thought that, if this blanket command was not in itself to be read as requiring the public to defray these expenses where the defendant making the demand could not meet them, the Constitutions of the Commonwealth and the United States — the concepts of due process and equal protection underlying the Transcript Cases — would require that result. See 355 Mass. at 577. The present cases are not less compelling: while the right to blood testing was conferred by statute, it is the Sixth Amendment itself that in terms guarantees "compulsory process for obtaining witnesses in [the accused's] favor," and this is paralleled in substance by art. 12 of our Declaration of Rights.

An affluent defendant prepared to pay the fees may summon witnesses nearly ad lib. There is no constitutional command that an indigent shall be provided with the same unbounded liberty. It is right that an indigent should have to establish need for his witnesses who are to be summoned at public cost; he may not demand excessive and therefore pointless expenditure. Cf. *Commonwealth* v. *Dirring,* 354 Mass. 523 (1968); *Draper* v. *Washington,* 372 U. S. 487, 495-496 (1963). There should be no serious difficulty in the defendant's coming forward with his reasons justifying the particular summonses, or in the judge's reaching an objective decision on the matter.

The Rules of Criminal Procedure that are now being formulated by an Advisory Committee may be expected to prescribe a procedure for impecunious defendants who seek process for needed witnesses. Pending adoption of an appropriate rule, a defendant believing himself entitled will apply to the competent judge — ex parte if the defendant should so desire[8] — supporting his application

[8] The reason ex parte application is allowed is that, just as a defendant able to foot the costs need not explain to anyone his reasons for summoning a given witness, so an impecunious defendant should be able to summon his witnesses without explanation that will reach the adversary. See the notes to Rule 17 (b) of the Federal Rules of Criminal Procedure, referred to in n. 10 below.

by affidavit showing his inability to pay the fees involved, setting out the names and addresses (if known) of the persons to be summoned, and stating why their attendance is necessary to an adequate defence. The judge may require the submission of further data. Authority for payment by the county on the court's order appears from G. L. c. 213, § 8.[9] The outlined procedure is similar to Rule 17 (b) of the Federal Rules of Criminal Procedure, to which the Commonwealth has referred as a model.[10]

The judge below may have thought that the affidavit supporting Blazo's motion was not sufficiently informing — he sought the attendance of seven witnesses on the basis of brief averments — but Blazo did offer to supply further data if desired. In all events Blazo will be required to satisfy the procedure just described when the case is resumed in the misdemeanor session.

2. *Stenographic recording.* Blazo and Lopez ask to have stenographic notes made of the proceedings in the misdemeanor session of the Superior Court. This claim looks ahead to the possibility that the defendants will be convicted on the trials de novo and will pursue review of the convictions upon exceptions under G. L. c. 278, § 31, in which case they may require, and therefore make a claim for, free transcripts. Otherwise stated, the attendance of a stenographer is claimed in order to effectuate such rights as

---

[9] This was the statute relied on for source of payment in the *Possehl* case, *supra,* 355 Mass. at 577 (1969), and before that in *A bodeely* v. *Worcester,* 352 Mass. 719, 722 (1967), with regard to payment of counsel appointed to represent indigent defendants. See also *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 514-515 (1972).

[10] Federal Criminal Rule 17 (b) states: *"Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

This rule reached its present form by amendment effective July 1, 1966, and an understanding of its details is best gotten by reading the notes of the Advisory Committee proposing that amendment, reproduced at 34 F. R. D. 426-427 (1964). See 1 Wright, Federal Practice and Procedure, § 272 (1969).

the defendants may have to secure access to verbatim records under the Transcript Cases.

The position in the Commonwealth is this. Under G. L. c. 278, §§ 33A-33B, an official stenographer is routinely provided to record the Superior Court proceedings in prosecutions for felony and for any misdemeanor tried with a felony. Where review is by "appeal" (the method employed following trial for murder or manslaughter, and used if ordered by the court in the other cases mentioned) there is express provision under which indigents may obtain transcripts at county expense. § 33B.[11] For misdemeanors, not felony-connected, tried in the Superior Court, there is no provision for stenographic recording.[12] But by G. L. c. 221, § 91B, inserted by St. 1965, c. 585, a defendant having the wherewithal may provide at his own expense for attendance of a stenographer and later for a transcription. *Commonwealth* v. *Shea,* 356 Mass. 358 .(1969). Under the reasoning of the Transcript Cases, the defendants here are entitled to some comparable facilities at public expense so far as needed for adequate review of right of final judgments of conviction, and the fact that these are prosecutions for misdemeanors rather than offences of higher grade should not deprive them. See *Williams* v. *Oklahoma City,* 395 U. S. 458, 459 (1969) ("violation of a city ordinance, quasi criminal in nature and often referred to as a petty offense"); *Mayer* v. *Chicago,* 404 U. S. 189, 195-196 (1971).

As indicated in point 1 above, exact equivalence of opportunity for indigents is not necessarily commanded. This is again illustrated by *Commonwealth* v. *Britt,* 362 Mass. 325 (1972). The case dealt with probable cause

---

[11] In this particular context "appeal" connotes review on the basis of a verbatim record.

With respect to the cases mentioned where the court may order "appeal," but in fact declines to do so, and review is thus by exceptions, there is no express statutory provision for indigent defendants' obtaining transcripts.

[12] Stenographers are routinely provided by the county for civil cases tried in the Superior Court (although transcripts must be paid for by the parties), so it appears that the only class of cases in the Superior Court at which stenographers do not attend routinely is misdemeanors not connected with felony.

hearings in a District Court in connection with felony charges. There was no statutory right to a stenographer or a transcript, but a solvent defendant could arrange for both under c. 221, § 91B. The indigent defendants demanded the same without cost, but a majority of the court held that they were not entitled. Among the factors relied on[13] was the circumstance that a probable cause hearing, though its content might be significant, was still at a considerable remove from a trial at which guilt or innocence would be adjudicated with the usual finality, subject to review.[14]

In the present cases considerations of fair and comparable treatment are heightened because the defendants do confront a jury trial with just such finality, subject to review of right. But the Commonwealth urges that the defendants, in preparing exceptions, can have functionally sufficient substitutes for stenographer's transcripts through the use of electronic tape recorders available to the Boston Legal Assistance Project and the Massachusetts Defenders Committee, the organizations that have furnished counsel for the defendants. In Lopez's case the judge

---

[13] The Supreme Court case nearest to our *Britt* case was *Roberts* v. *La Vallee,* 389 U. S. 40 (1967), which involved the record of a preliminary hearing, but there — unlike the situation in Massachusetts — the State had provided for recordation of the hearing by an official stenographer and the question was on the indigent's right to a free transcript of an existing stenographic record. Our court in the *Britt* case indicated, further, that a decision for the defendant, extended over seventy-two District Courts and the Municipal Court of the City of Boston, might put such a levy on stenographers as in practical effect to deny equal protection of the laws; the Legislature might indeed prefer an annulment of c. 221, § 91B. No question about the possible use of electronic recording in lieu of stenography was before the court. See 362 Mass. at 332 (1972).

It is believed that the practical effect of the present qualified decision will be moderate because of the differences in numbers of cases affected, the experience in jury-of-six cases (see n. 22 below), and other factors. And see below the discussion of counsel's responsibility.

[14] Somewhat analogous is *Ross* v. *Moffit,* 417 U. S. 600 (1974), where the Supreme Court, answering a question left open in *Douglas* v. *California,* 372 U. S. 353 (1963), held (six to three) that the State of North Carolina was not constitutionally required to provide counsel for an indigent to· conduct an application for discretionary review by a higher court after he had been provided (pursuant to the *Douglas* case) with counsel for a first appeal of right which proved unsuccessful. Substantial adequacy and comparability were shown by an analysis of the character and criteria of the discretionary review involved, taken together with the assistance provided by counsel at trial and in the briefing of the first appeal, by the opinion below, and by the availability of a transcript of the trial.

indicated that he would permit use of a tape recorder, and we suppose it would also have been permitted in Blazo's case. See Rule 47A of the Superior Court (1954), superseded by Rule 17, effective July 1, 1974; cf. Rule 46 of the Rules of the District Courts (1965), as amended June 1, 1972. The defendants, however, do not agree that the machines are adequate for picking up enough of the testimony and colloquies to provide a basis for framing a cogent record (see *Commonwealth* v. *McGrath,* 361 Mass. 431, 432-434 [1972]). They point to the mechanical infirmities of their recorder units (acquired at a price of around $50 each),[15] and to the marked inferiorities of this equipment when compared with the recording devices that have been considered suitable for official installation in our courts as a possible alternative to stenographic recording.[16] They note, since the question opened up is a general one, that there are indigent defendants who have no access even to a tape recorder. And they lay stress on the importance that this court in *Commonwealth* v. *Shea,* 356 Mass. 358, 361 (1969), attached to counsel's recourse to a full transcript when he prepared for review — the case was one like the present where a defendant in the misdemeanor session of the Superior Court was looking ahead to review by exceptions.[17]

---

[15] The statements of agreed facts in the two cases describe the tape recorders and say as to past experience with them in the District Courts: "[T]he overwhelming majority were defective to the extent that almost without exception, some portions of the matters recorded on those tapes were unintelligible. There was great discrepancy among the tapes in terms of the quality of the recordings. Most of the tapes contained the bulk of the information recorded; a substantial number were incomplete in that significant portions of the proceedings did not appear on the recording, and some of the tapes were of no value whatsoever."

[16] See n. 24 below.

[17] "Without a stenographic record, the prosecuting of an appeal in which questions of evidence, questions relating to the charge, and the propriety of rulings and instructions and the like are involved is hazardous. It opens the door to conflicting versions of what occurred at the trial, and the failure to settle these questions satisfactorily might often result in a miscarriage of justice. It is conceivable that the defendant in fact suffered no prejudice by the lack of a stenographic record, but as to that we can only speculate. Without such a record the showing of prejudice is rendered difficult. We prefer to resolve any doubts on this score in favor of the defendant. Accordingly, there must be a new trial." The

The truth of the matter is that the need for a record, or for a record of a given fidelity, varies from case to case. Misdemeanor prosecutions generally present simple issues. In some instances review in the event of conviction can be seen from the beginning to be a futility, and is not contemplated. In other instances tape recorders, or even hand-kept notes, may well suffice for any possible purposes of review. In still other situations a verbatim record can be essential for protection of the defendants' rights. The problem is that in particular cases it may be hard to tell in advance what the defendant coming to trial will need in the form of a record if the jury convict and review is called for. Unlike a showing that a particular witness is needed, a demonstration that a given method of preserving a record for eventual review will or will not be adequate, may be difficult, time consuming, and in the end unsatisfactory precisely because of the speculative factors involved.[18] The consequences of refusing a stenographer, however, could be serious if it turned out that the judge's guess was wrong and a verbatim record, full or partial, was later shown to be actually requisite. An attempt at pre-trial demonstration might prove not only difficult but embarrassing. It could put pressure on counsel to disclose more of what he proposed to do at trial than he would otherwise be bound (or at liberty) to reveal. So also it could be awkward to try to demonstrate to the judge slated to try a case that there was such potentiality that error would be committed that special precautions should be taken in recording the proceedings. Cf. *Draper* v. *Washington,* 372 U. S. 487, 498 (1963).

Practical considerations thus suggest that here the indigent should be placed roughly in the position of the

_Shea_ case at 361. See *Hardy* v. *United States,* 375 U. S. 277, 282, 288 (1964) (Goldberg, J., concurring); *Mayer* v. *Chicago,* 404 U. S. 189, 195 (1971).

In the *Shea* case it was a denial of the defendant's right to a stenographer under G. L. c. 221, § 91B, that was held to be the error requiring reversal of his conviction in the misdemeanor session.

[18] This problem of forecasting was not faced in the Transcript Cases which typically involved the question of the indigent's right to a transcript from an existing official stenographic record. See n. 13 above.

nonindigent, that is, it should be left to the indigent's counsel to decide, in the light of eventualities as he can best project them, whether less costly alternatives are infeasible and a stenographic record is required. To put the proposition more formally, we think a defendant in a misdemeanor session, on proof of his inability by reason of indigence to avail himself of c. 221, § 91B, should be entitled on request to have a stenographer record the proceedings.[19] As we shall point out below, the request will be understood to be a good-faith representation by counsel that in his considered judgment such a verbatim record is needed to insure protection of the defendant's rights. Counsel may be helped to a conscientious judgment by the fact that the nature of the case will often have become clear during the provisional trial in the District Court. A reasonable forbearance in requesting stenographers is essential pending a general solution of the problem of maintaining records at tolerable costs.

When the trial has taken place, and the defendant in fact applies for a free transcript of all or part of the record, a good basis will exist for deciding whether or to what extent he requires such assistance in order to exercise effectively his right to appellate review. Cf. *Commonwealth* v. *King,* 356 Mass. 495 (1969). When an adequate record has been made that can be read out or played, it will often, though not always, be possible to prepare exceptions without making a typed transcript. If the Commonwealth objects to the particular request of the defendant on the ground that it imposes unnecessary expense or delay, an informal hearing should be held and the judge should pass on the matter. Whether the defendant is being extravagant in his request will turn in considerable degree on the number and nature of the points he intends to raise in the reviewing court. Under *Mayer* v. *Chicago,* 404 U. S. at 195 (1971), the judge is advised to be careful not to limit access to a

---

[19] If suitable electronic recording should become available, see n. 24 below, it could serve in lieu of stenographic recording.

transcript unduly by any hasty prejudgment of the merits of the defendant's contentions.[20]

We are the more confident about the soundness of these procedures with respect to preserving a record and obtaining a transcript because they are consistent with those recently laid down by statute for defendants, found guilty in enumerated District Courts of offences within District Court jurisdiction, who appeal and claim a trial de novo by a jury of six in specified District Courts, instead of appealing and claiming a jury of twelve in the Superior Court. See G. L. c. 218, § 27A, inserted by St. 1972, c. 620, § 1, bringing together earlier particular enactments.[21] This statute provides that the judge presiding over trial by a jury of six shall on request of the defendant appoint a stenographer to record the testimony, the compensation and expenses of the stenographer being borne by the county. The statute says that a party requesting a full or partial transcript must pay the stenographer for it; but here the Transcript Cases come in to enable an indigent to claim any appropriate relief.[22] We add that there is ground for argument that a discrimination might be worked against indigents in jury-of-twelve appeals tried in the misdemeanor session of the Superior Court if their rights were held to be less than those of indigents in jury-of-six appeals in the District Courts.[23]

---

[20] ". . . [W]here the grounds of appeal, as in this case, make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." The *Mayer* case at 195. See *Britt* v. *North Carolina,* 404 U. S. 226, 230 (1971).

[21] There are fifty-six such enumerated District Courts, and thirteen to which the appeals are remitted and where the six-man jury trials are held.

A defendant who has appealed to a jury of six waives any right to appeal to a jury of twelve, but a defendant who appeals to a jury of twelve may in the discretion of a judge of the Superior Court be permitted to forgo that appeal if he acts before the time of trial and appeals to the jury of six.

[22] And his claim would be strengthened by the fact that a stenographic record would already have been made; see n. 13 above.

[23] General Laws c. 278, § 18A, allows defendants convicted of misdemeanors (other than libel) in any District Court for Suffolk County or in the Municipal Court of the City of Boston (none of these being an enumerated court under G. L. c. 218, § 27A, see n. 21 above) to appeal to a jury of twelve in the Municipal Court of the City of Boston, waiving thereby any claim to appeal to the Superior Court, but there is no provision about demands for a stenographer.

Blazo *v*. Superior Court.

In deciding whether to request that a stenographer attend and record the proceedings or to rely instead on a tape recorder or the like, and again in deciding whether to request full or partial transcripts or to depend on other means to prepare for review, counsel are expected to act responsibly and avoid making unnecessary or exorbitant demands on the time of stenographers and on public resources; they are to act as if they were representing nonindigent clients to whom the expenditures in question were matters of serious consequence. (The same applies to the summoning of witnesses discussed in point 1, and to demands for stenographers in jury-of-six trials.) Just this point about counsel's attitudes was made by Chief Justice Burger, concurring in *Mayer* v. *Chicago,* 404 U. S. 189, 199 (1971). He spoke of "the duty of counsel as officers of the court to seek only what is needed," and he concluded that "[w]hen excessive demands are made by an appellant in order to postpone the day when the appeal is finally determined, because, for example, he is at liberty pending appeal, a lawyer who cooperates is guilty of unprofessional conduct." *Id.* at 199-200, 201 (footnote omitted).

As to a more general solution for the future: The high desirability of having proceedings in criminal cases suitably preserved as a matter of routine is widely recognized. But competent stenographers are in short supply and their services are necessarily expensive. Accordingly, an alternative method of recording through officially approved, sophisticated electronic equipment has been carefully studied, and its introduction strongly recommended.[24] If such an official method should become available, it would profoundly affect a range of problems including the present. It would furnish a relatively inexpensive means of preserving testimony and could also greatly ease the

---

[24] For a full discussion, see the Report on Preservation of Testimony in District Court Proceedings, November 30, 1973, rendered by the Chief Justice of the District Courts to the Chief Justice of the Supreme Judicial Court. For a description of the characteristics of an acceptable apparatus, see pp. 15-21. The unit price of the apparatus (four-channel audio recorder, microphones, and operator headset) was estimated at $2,235 (p. 109), to be amortized over eight years.

problem of preparing a satisfactory record for purposes of appellate review.

3. *Disposition.* In the light of this opinion, counsel will wish to reconsider what requests they are warranted in making to the judge below.

The orders of the assigned judges in the Superior Court denying applications are vacated and the petitioners, if upon consideration they are so advised, may reapply for relief in accordance with this opinion.

*So ordered.*