STANLEY J. MIASKIEWICZ *vs.* COMMONWEALTH.

Suffolk. January 7, 1980. — March 14, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Contempt. Practice, Criminal,* Contempt proceeding, Trial by jury, Transcript of evidence. *Judge. Perjury.*

Where a judge gave a defendant detailed notice of a charge of criminal contempt, appointed counsel for him, and continued the case for more than a month to give him opportunity to defend or explain his conduct, the defendant had adequate notice of the charges and a reasonable opportunity to meet them. [156]

Where a criminal contempt proceeding was conducted before the effective date of Mass. R. Crim. P. 44 (a), prosecution by complaint or indictment was not required. [156]

In a proceeding on a criminal contempt charge, which occurred prior to the effective date of Mass. R. Crim. P. 44 (a), the judge did not err in denying a motion for a jury trial. [156-157]

A judge in a proceeding on a criminal contempt chargè was not required to recuse himself where the nature of the alleged contemptuous conduct was not such as was likely to affect the judge's impartiality. [157]

In a proceeding on a charge of criminal contempt arising from the defendant's testimony in a civil action, the judge did not err in denying the defendant's motion for a complete transcript of the civil trial where he was supplied with a partial transcript which included the testimony listed as particulars in the citation for contempt and had access to all the exhibits which were relied on by the judge. [157]

Evidence that a plaintiff in a civil action not only committed perjury but also enlisted substantial judicial resources in a baseless, false and wasteful cause warranted a finding that he was guilty of criminal contempt. [157-158]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on April 5, 1979.

The case was reported by *Wilkins, J.*

*Paul A. D'Agostino* for the plaintiff.

*Robert M. Raciti,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The petitioner, Stanley J. Miaskiewicz, was the plaintiff in a civil action tried before a jury in the Superior Court.   After the trial, which lasted eleven days and resulted in a verdict for the defendant, the judge found that the petitioner's testimony "was a tissue of fabrications which was knowingly undertaken, which tended to baffle the inquiry at hand, which degraded and obstructed the administration of justice and which interfered with the capacity of the Court and jury to determine the rights of the parties according to law."   The judge found the petitioner guilty of petty criminal contempt, and sentenced him to three months in a house of correction.   The petitioner sought review by a petition for a writ of error, and a single justice of this court reserved and reported the case to the full court.   We affirm the conviction.

We summarize the judge's findings.   The petitioner, a Roman Catholic priest, and Arlene LeTourneau, a parishioner, had a close and intimate personal relationship from about February, 1974, to December, 1975.   Thereafter, LeTourneau wrote a series of letters to the church hierarchy which, if not true, were defamatory of the petitioner.   He brought a civil action against her for defamation.   A central issue in the action was whether the petitioner and LeTourneau had lived together and traveled together as husband and wife from April, 1974, until November, 1975.   He unequivocally denied accompanying her to Quebec, South Carolina, Las Vegas and the Canadian Rockies during this period; her contrary testimony was corroborated by the testimony of others and by photographs, motion pictures, a hotel bill, credit card receipts, clothing, correspondence, traveler's checks, and an insurance policy on his life naming her as beneficiary.

At the outset of trial, it appeared from the pretrial discovery that there would be irreconcilable conflicts of testimony, and the judge instructed both counsel to inform their clients of G. L. c. 268, § 4, relating to perjury.   On Febru-

ary 12, 1979, after the jury retired but before verdict, the judge read into the record a memorandum and order. He recited facts not in dispute, and found "probable cause to believe that the plaintiff has wilfully perjured himself concerning facts about his relationship with the defendant, that those falsehoods are material to [the] issue presented to the jury, and that the wilful acts of the plaintiff have obstructed and degraded the administration of justice and have interfered with the capacity of the Court to determine the rights of the parties according to law." He then listed as particulars five denials by the petitioner, including those with respect to Quebec, South Carolina, Las Vegas and the Canadian Rockies. The petitioner was ordered to appear on February 20, 1979, to show cause why he should not be held in criminal contempt. The judge further ordered that the charges be reduced to writing, served on the petitioner, and prosecuted by the district attorney.

On February 14, 1979, a "citation for criminal contempt" was filed, based on the judge's memorandum of February 12, the petitioner's counsel in the civil action was permitted to withdraw and the Massachusetts Defenders Committee was substituted, and the petitioner was arraigned and pleaded not guilty. On February 26, the judge denied several motions made by the petitioner: a motion to dismiss, a motion for a complete transcript of the civil action, a motion for a jury trial, and a motion to recuse the judge. A partial transcript and a summary of testimony based on the judge's notes were made available to the petitioner.

The matter was heard on March 30, 1979. The petitioner's four motions were renewed and again denied. The judge announced that he was taking judicial notice of the proceedings in the civil action. No evidence was offered by the Commonwealth. The petitioner introduced the judge's February 12 memorandum, the partial transcript and the summary of testimony as exhibits, but offered no other evidence. Counsel for the petitioner argued against a finding of guilty. The judge then made his finding of guilty, and imposed sentence. The sentence has been stayed pending our decision.

1. *Contempt procedure.* The contempt case was heard and decided before the effective date of Mass. R. Crim. P. 43, 44, 378 Mass. 919, 920 (1979). See *Katz* v. *Commonwealth,* 379 Mass. 305, 311-313 (1979). The judge was familiar with the rules proposal then pending, but he sought to follow the procedure prescribed by *Blankenburg* v. *Commonwealth,* 260 Mass. 369 (1927), *S. C.,* 272 Mass. 25 (1930), cert. denied, 283 U.S. 819 (1931), as supplemented by *Sussman* v. *Commonwealth,* 374 Mass. 692 (1978). The *Blankenburg* case on its facts bears striking similarities to the present case.

The judge did not treat the petitioner's conduct as requiring summary punishment to maintain order in the courtroom. See Mass. R. Crim. P. 43 (a); *In re Oliver,* 333 U.S. 257, 274-278 (1948); *Sussman* v. *Commonwealth,* 374 Mass. 692, 695-701 (1978). Instead, he gave the petitioner detailed notice of the charge of criminal contempt, appointed counsel for the petitioner, and continued the case for more than a month to give the petitioner a full opportunity to explain or defend his conduct.

2. *Need for complaint or indictment.* Under Mass. R. Crim. P. 44 (a), if a criminal contempt is not adjudicated summarily pursuant to rule 43, it is to be prosecuted by means of complaint or indictment. The petitioner urges us to insist on the same rule here, but we decline. Technical accuracy of pleading has not traditionally been required in contempt cases, and we do not apply the new rules to proceedings conducted before their effective date. *Fay* v. *Commonwealth,* 379 Mass. 498, 502-503 (1980), and cases cited. The procedure followed by the judge gave the petitioner adequate notice of the charges and a reasonable opportunity to meet them.

3. *Jury trial.* Under Mass. R. Crim. P. 44 (a), a case of criminal contempt not adjudicated summarily "shall proceed as a criminal case." This brings into play the right to jury trial. G. L. c. 263, § 6 (waiver). G. L. c. 278, § 2 (criminal cases in Superior Court). *Commonwealth* v. *Germano,* 379 Mass. 268 (1979) (minor motor vehicle viola-

tions).  *Commonwealth* v.  *Thomas*, 359 Mass. 386 (1971) (juvenile delinquency).  *Commonwealth* v. *Hesser*, 1 Mass. App. Ct. 877 (1974) (parking offenses).  Before the effective date of the new rules, however, there was no right to a jury trial under Massachusetts State law in a proceeding for contempt, and Federal law required a jury trial only if an actual penalty of more than six months' imprisonment was imposed.  *Matter of DeSaulnier (No. 3)*, 360 Mass. 769, 773-775 (1971), and cases cited.  See *Furtado* v. *Furtado, ante* 137, 142 n.5 (1980).  There was therefore no error in denying the respondent's motion for jury trial.

4. *Recusal.*  Since the record does not indicate that the nature of the alleged contemptuous conduct was such as was likely to affect the judge's impartiality, there was no error in his denial of the petitioner's motion for recusal.  *Fay* v. *Commonwealth*, 379 Mass. 498, 505-506 (1980).  *Katz* v. *Commonwealth*, 379 Mass. 305, 313 (1979).  See Mass. R. Crim. P. 44 (c).

5. *Transcript.*  The partial transcript supplied to the petitioner included those portions of his testimony in the civil action which were listed as particulars in the citation for contempt.  The summary supplied to him gave a detailed account of the eleven days of testimony.  In addition, he had access to all the exhibits, which were heavily relied on by the judge both in his finding of probable cause and in his ultimate finding of guilt.  Finally, the judge instructed counsel who represented both parties in the civil action to cooperate with counsel appointed for the petitioner in the contempt case, but the latter counsel reported that he had decided not to confer with prior counsel.  In these circumstances, the petitioner fails to indicate how a complete transcript of the testimony in the civil action would have assisted him in presenting an effective defense or explanation of the conduct charged to be contemptuous.  See *Britt* v. *North Carolina*, 404 U.S. 226, 227 (1971); *Blazo* v. *Superior Court*, 366 Mass. 141, 150 (1974).  There was no error in the denial of his motion for a complete transcript.

6. *Perjury as contempt.*  A person who lies under oath may be guilty of criminal contempt without meeting the

technical requirements of perjury. "The crime of perjury in a judicial proceeding occurs whenever one 'willfully swears or affirms falsely in a matter material to the issue or point in question.' G. L. c. 268, § 1." *Commonwealth* v. *Geromini*, 357 Mass. 61, 63 (1970). On the other hand, perjury alone does not constitute criminal contempt; there must be the further element of obstruction of the court in the performance of its duty. *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 31-34 (1930), cert. denied 283 U.S. 819 (1931). See *Katz* v. *Commonwealth*, 379 Mass. 305, 316 (1979); cf. *Fay* v. *Commonwealth*, 379 Mass. 498, 502 (1980). The petitioner argues that no such additional element was shown here. But, as the court pointed out, much more than mere perjury of a witness was shown. The petitioner, as plaintiff, initiated a civil action supported by a "tissue of fabrications." He called twelve witnesses, the trial lasted eleven days, and the cost of jurors' pay was $2,240. Seventy-one exhibits were admitted in evidence, and fifty-two more were marked for identification. Most of the trial time was devoted to the introduction of evidence of the truth of what the plaintiff claimed to be false and defamatory. The petitioner not only lied wilfully under oath, but enlisted judicial resources in a baseless, false and wasteful cause. His conduct constituted both an affront to the court's dignity and a perversion of the court's purposes as an institution for just resolution of legitimate disputes.

*Judgment affirmed.*