van Gestel, J.
For the third time post-judgment, this case is before the Trial Court on a motion by the plaintiff, Vimal Desai (Desai), seeking relief from judgment after a defendant’s verdict in a medical malpractice action. On June 30, 1998, the Appeals Court granted Desai, there the appellant, leave to file a Rule 60(b) motion in the Trial Court. This Court denied that motion because the time limitations in Rule 60(b) did not appear to permit it [8 Mass. L. Rum. No. 27, 597 (September 7, 1998)]. Even earlier, on March 3, 1997, this Court denied Desai’s motion for a new trial, On July 7, 1998, the Appeals Court, yet again, allowed another request by Desai to file in the Trial Court the most recent motion for reconsideration of the denial of the motion for new trial. As a result, appellate proceedings again have been stayed, this time to August 11, 1998.
On July 16, 1998, the Court received from the Worcester Superior Court Clerk’s Office Desai’s motion and memorandum, with attached exhibits; and, by separate direct mailing, the defendant’s opposition thereto.
Neither party has sought in any way to have or present evidence on the underlying issues, nor has either party asked for oral argument on the motion or the opposition. Normally, motions for reconsideration of issues already decided are determined on the papers. This Court, in the absence of a request by the parties or direction from the Appeals Court to do otherwise will proceed in the normal manner.
BACKGROUND
Although full and complete familiarity with this Court’s two prior memoranda and decisions[1] will be assumed, it may help to illuminate the determination on the newest motion for some of the background to be repeated.
On December 4, 1996, after a three-day trial, a Worcester County jury returned a verdict in favor of the defendant, Mohan Korgaonkar, M.D. (Dr. Korgaonkar), finding him not negligent in his treatment of Desai for appendicitis.[2] Judgment was entered in Dr. Korgaonkar’s favor on January 21, 1997. On March 3, 1997, this Court denied Desai’s motion for a new trial. A notice of appeal was thereafter timely filed.[3]
The Rule 60(b) motion referred to above was filed, with leave of the Appeals Court, on June 16, 1998. The motion papers recited that it was predicated on *675 Mass.R.Civ.P. 60(b)(3) and 60(b)(6), and nothing said by the parties at oral argument thereon suggested the contrary. Because that motion was too late under Rule 60(b)(3) and could not be resurrected by Rule 60(b)(6), it was denied.
The present motion followed, with leave again having been granted by the Appeals Court to proceed in the Trial Court. The underlying factual situation on which this motion is based, like the Rule 60(b) motion before it, is described below.
At the trial in 1996, Dr. Korgaonkar appeared as a witness on his own behalf during the presentation of his case-in-chief. Near the end of a lengthy direct examination by his attorney, Michael R. Mosher (Mr. Mosher), Dr. Korgaonkar was asked the following question:
Now, Dr. Korgaonkar, is this the first time you’ve been sued for medical malpractice?
Over Desai’s counsel’s objection, this Court — erroneously, it believes, upon reflection[4] — allowed Dr. Korgaonkar to respond. His answer was:
Yes, sir. Since last maybe, twenty years of my practice this is the first time ever, and hopefully the last.
In addressing Desai’s first post-judgment motion for a new trial on March 3, 1997, this Court stated in its Memorandum and Order that it did “not believe that the admission of the single answer to the question propounded to Dr. Korgaonkar, while perhaps erroneous, was prejudicial,” and thus found the error to be harmless. The Court also noted that the “evidence was more than sufficient to warrant the verdict." The Court then stated its satisfaction “that there was no accident, mistake or misfortune in any conduct of this trial that requires a new trial in order to prevent a failure of justice,” and denied the motion.
The recently filed Rule 60(b) motion revealed that Dr. Korgaonkar’s testimony concerning the absence of any previously filed medical malpractice suit against him was not true. Dr. Korgaonkar was sued in a malpractice case — Dastur v. The Medical Center of Worcester, et al., Civil Action No. 90-1885-B — entered in the Worcester Superior Court in 1990, just 16 months before suit was filed against him in this case. Further, in the Dastur case Dr. Korgaonkar was represented by Mr. Mosher.
The Dastur case was filed on June 11,1990. Service was made therein on Dr. Korgaonkar on September 10, 1990. Mr. Mosher’s first appearance for Dr. Korgaonkar occurred on September 12, 1990, with a motion to extend the time to answer. Thereafter, several pleadings were filed by Mr. Mosher on Dr. Korgaonkar’s behalf, including an answer, a set of interrogatories, a motion and a supporting memorandum compelling service of an offer of proof in connection with screening of the case by a medical malpractice tribunal, and a motion to dismiss and for entry of separate judgment, together with a supporting memorandum, after the tribunal determined the case against Dr. Korgaonkar to be insufficient. The Dastur case, as against Dr. Korgaonkar, was dismissed on March 7, 1991.
Mr. Mosher’s time records indicate that he spent 10.90 hours in the representation of Dr. Korgaonkar in the Dastur case. Two younger, associate lawyers and a paralegal assistant supervised by Mr. Mosher charged 7.90 additional hours on the case. On November 20, 1990, Mr. Mosher charged 2.00 hours described in the time sheets as “Attended Meeting with client Dr. Korgaonkar.” Those records also reflect three telephone calls with Dr. Korgaonkar: on October 3, 1990; November 7, 1990; and January 10, 1991.
Both Mr. Mosher and Dr. Korgaonkar filed affidavits in opposition to the Rule 60(b) motion.[5] In each, they stated that they had no memory of the prior representation in the Dastur case until it was brought to their attention recently, and that the challenged question and answer in the trial of this case was not preplanned or intended to present erroneous testimony before the Court and jury.
DISCUSSION
In its memorandum and order denying the Rule 60(b) motion, this Court expressed its “sense of unease”[6] that its error in ruling on the challenged question may have resulted in a structural flaw in the trial of this very old case. It noted that at the time of the hearing on the motion for a new trial in 1997, given the facts then known, the Court had confidence in its determination that the error was harmless. At the time of the Rule 60(b) motion, however, with the potential of fraud on the court — or worse — the Court stated that if it could get beyond the procedural impasse described in its memorandum, it would have to attempt to sort out what it believes to have occurred; what response to that determination is proper; and whether it remains to be of the view that the situation flowing from the Court’s evidentiary ruling was harmless error.
Before reaching the substance, however, an examination of the procedural status and the limitations and powers granted by Rule 60(b) led the Court to conclude that neither of those sections provided support for any action by it at that time.
The Court also noted in its memorandum on the Rule 60(b) motion that while it was offended by the circumstances, it could not be said that the judicial machinery was unable to perform in the usual manner its impartial task of adjudicating this case. The Court postulated that, while Dr. Korgaonkar’s testimony was false, it could not be said, on the record and materials presented, that there was perjured testimony which influenced the judgment of this Court, citing Commonwealth v. Geromini, 357 Mass. 61, 64 (1970).
*676 The Court then went on to point out “that an independent action predicated upon a charge of fraud on the court may be brought without being barred by Rule 60(b)’s temporal limitations,” see June 30, 1998 memorandum at p. 7; and noted in footnote 5 thereof that an “independent action, should it be pursued ... could proceed with discovery and an evidentiary hearing that would assist a judge in answering the questions that so far remain in the mist.” There followed a two-page explanation of some of the unanswered questions bothering the Court. That portion of the June 30, 1998 memorandum, appearing on parts of pages 8-10 [8 Mass. L. Rptr. 597, 599-600], reads as follows:
The Court has no evidence before it that would warrant the devastating conclusion that Mr. Mosher, a respected member of the Worcester trial bar, conspired with his client to knowingly present peijured testimony in this case. His affidavit, and that of the defendant doctor, strongly deny that such a thing occurred; and on the present record this Court accepts those affidavits, to that extent.
The professed utter failure in the memories of two highly intelligent professionals, however, leaves this Court with much more skepticism.
Mr. Mosher handles many medical malpractice cases, and thus his lack of memory of the Dastur case is, for the most part, not surprising. After all, the amount of time spent on it was not great; the actions taken were routine; and the result — dismissal after a finding in Dr. Korgaonkar’s favor by a screening tribunal — all suggest that this was not a momentous event in Mr. Mosher’s professional life. But it is harder to view generously his lapse of memory in light of: the two-hour meeting between Mr. Mosher and Dr. Korgaonkar in the Dastur case; and the fact that the doctor’s name — Mohan Korgaonkar — can hardly be considered common in the Worcester medical community. Was there not some recognition by Mr. Mosher on one of his presumably many pretrial meetings with Dr. Korgaonkar in this case? And what of Mr. Mosher’s law firm — does it not perform client conflict checks with each new case that it takes on? Would such a check not be recorded; and, if made, would it not have revealed that Dr. Korgaonkar was a former client just 16 months earlier?
Dr. Korgaonkar’s asserted memory loss is, despite his affidavit, frankly veiy hard to accept. Here is a physician whose response to the question about whether he had ever been sued previously was not only in the negative, but also included the gloss of not having been sued in his 20 years of practice and the hope that he would never be sued again. This was testimony witnessed by the Court from a physician who throughout much of his time on the witness stand exuded an air of affront that his treatment of Vimal Desai should be challenged in a court. He appeared offended at being a defendant. Is this the kind of person who would fail to remember another such affront just 16 months prior to the Desai suit? Dr. Korgaonkar, unlike Mr. Mosher, is not involved on a daily basis with medical malpractice lawsuits. Can his affidavit really be credited when he says in it that he neither remembered the only other occasion when he was sued, nor remembered that his lawyer on that other case was Mr. Mosher, the same lawyer as here?
And what may be thought of the professed continued failures of memory by both men after they should have been sharpened by the plaintiffs original motion for a new trial and the appellate process that followed?
Skepticism over the points raised above, and the great harm that false testimony does to the search for truth and justice, causes the unease. Nevertheless, the Court has not been presented with either the evidentiary tools or the procedural vehicle to resolve these very disturbing issues.
The Court remains without the evidentiary tools, and doesn’t envisage this motion for reconsideration as the optimum procedural vehicle to resolve this very serious issue. The Court also has a sense that there are significant temporal problems with hearing a motion to reconsider a motion for a new trial well over a year after the motion for new trial was decided, and nearly 18 months after judgment was first entered. “All motions under Rule 59 . . . must be served (although not necessarily filed) no later than ten days after entry of the objectionable judgment. It is this strict deadline — which Rule 6(b) forbids the court to enlarge— which distinguishes the relief which Rules 52 and 59 afford from that available through Rule 60.” See, e.g., Smith and Zobel, Rules Practice, 8 Mass. Prac. Series, Sec. 59.1, p. 441.
This Court can only assume that the parties who filed and briefed this motion, and the Appeals Court which allowed it to be filed and sent to the Trial Court for determination, were fully aware of all of these evidentiary gaps and procedural issues and, nevertheless, look to this Court to decide the substance of the issue presented, on the papers before it. The following is this Court’s effort.
Mass.R.Civ.P. Rule 59(a)(1) “permits the granting of a new trial ‘in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.’ ” Galvin v. Welsh Mfg. Co., 382 Mass. 340, 342 (1981). “ ‘[T]he court may grant a motion for a new trial, timely served, for a reason not stated in the motion,’ provided the judge specifies the grounds in the order. Mass.R.Civ.P. Rule 59(d).” Id. at 343. “A new trial should not be ordered, however, unless the failure to do so ‘appears to the (trial) court inconsistent with substantial justice.’. . . Accordingly, a new trial should not be granted if the *677 error does ‘not affect the substantial rights of the parties.’ ” Id.
Of the more common reasons that have “crystallized” as providing a basis for granting a new trial,[7] only the categories of newly discovered evidence and misconduct of counsel seem relevant here.
A new trial may be granted on the basis of newly discovered evidence when that evidence “probably would be a real factor with a jury in reaching a decision” on retrial. Leavitt v. Miztner, 404 Mass. 81, 89 (1989). Here, however, it must be presumed that Mr. Mosher would not ask the same question of Dr. Korgaonkar again; and even if he did, the Trial Court would not make the same error in his or her evidentiary ruling, and therefore the answer would not be permitted. Similarly, now that plaintiffs counsel knows that Dr. Korgaonkar had been sued before, he should be no more successful in getting that evidence admitted in a new trial. Thus, the “newly discovered evidence” would not be a factor in any new trial.
Additionally, any purported newly discovered evidence “must have been unknown and unavailable at the time of trial despite the diligence of the moving party." Id. See, also, Commonwealth v. Williams, 399 Mass. 60, 64 (1987). There has been no showing here that Desai’s counsel could not have been able to determine Dr. Korgaonkar’s prior litigation history, particularly that of the Das tur case in the very same Superior Court, long before the 1996 trial in this case. Counsel in medical malpractice cases regularly probe, sometimes to excess, the litigation history of physicians who appear as defendants and as expert witnesses. It could have been done here pretrial, just as it was posttrial.
For the two reasons noted above, the newly discovered evidence of Dr. Korgaonkar’s involvement as a defendant in the Dastur case cannot form a basis for granting a new trial in this case.
When misconduct by counsel is relied upon as the predicate for a new trial motion, the issue usually arises in the context of improper argument that cannot be obviated by a curative instruction from the court. See, e.g., Smith and Zobel, Rules Practice, 8 Mass. Prac. Series, Sec. 59.8. This Court has found no cases in which fraud upon the court has served as the basis for a new trial. Nevertheless, that being the issue here, it will be assumed as a valid basis and examined accordingly.
A recent statement by the Supreme Judicial Court suggests that “[f]raud on the court is a “wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot be tolerated consistently with the good order of society.’ ” In the Matter of Neitlich, 413 Mass. 416, 423 (1992). Aperson who lies under oath may be punished for contempt even if the statements are not technically perjury. Miaskiewicz v. Commonwealth, 380 Mass. 153, 157-58 (1980). “On the other hand, perjury alone does not constitute criminal contempt; there must be the further element of obstruction of the court in the performance of its duty.” Id. at 158. This requirement is not unlike that imposed in assessing newly discovered evidence in the setting of a new trial motion.
The kind of fraud on the court charged here, however, is not the kind that prevented the plaintiff from presenting the merits of his case. Gifford v. Westwood Lodge Corp., 24 Mass.App.Ct. 920, 922 (1987). This false testimony was not at the heart of the claim. Given the absence of any evidence, the Court cannot even say whether this testimony was knowingly false to the witness, Dr. Korgaonkar, or known to be false by the interrogator, Mr. Mosher. Thus, for purposes of this discussion the Court must express its views on the assumption that the statement, when made, was not knowingly false to either Dr. Korgaonkar or Mr. Mosher, and was not part of a conscious scheme to . deprive the jury of truthful evidence on which they should rely in finding the facts.
What is sought by the present motion is a new trial, not sanctions against Dr. Korgaonkar or Mr. Mosher. Regrettably, if in every trial in which false testimony was given on a point not central to the case the losing party was entitled to a new trial just for that reason alone, a very large majority of cases would never come to an end. To say this is not meant, in any way, to minimize or turn a blind eye to the serious effect on the quest for truth presented by false testimony, nor is it intended to give solace or reward to liars. Rather, it is a recognition of a very practical fact of life, particularly in the litigation of cases as old as this one.
It cannot be over-emphasized that the underpinnings for the Court’s conclusion on this motion rest on the fact that it has been presented with absolutely no evidence to explain the background of how the false testimony came about, other than the still-unchallenged affidavits of Dr. Korgaonkar and Mr. Mosher. Thus, this Court intends no indication whatsoever as to how it might rule were more facts before it. Indeed, if the testimony was on a matter central to the case, even if it was not knowingly false, this Court would conclude there to be sufficient interference with the trial process to warrant a proper sanction — and, perhaps, to deem the only satisfactory sanction to be the granting of a new trial to the other side. The parties, however, have not equipped the Court with the evidentiary tools to render that determination.
ORDER
For the reasons set forth above, the plaintiffs Motion for Reconsideration of the Denial of the Plaintiffs Motion for New Trial must be DENIED.

 Memorandum and Order on Plaintiffs Motion for a New Trial, March 3, 1997; and Memorandum and Order on the Plaintiffs Motion for Relief from Judgment, June 30, 1998 [8 Mass. L. Rptr. No. 27, 597 (September 7, 1998)].

 Although the diagnosis was correctly made, the operation that followed failed to remove the infected appendix. A second, more extensive surgery was required several months later, at which time Desai’s appendix was removed, along with part of his small intestine and bowel.

 The Court previously was advised that the appeal has been fully briefed and is currently awaiting the scheduling of oral argument in the Appeals Court.

 Dr. Korgaonkar’s counsel previously reported to this Court, in a footnote in his memorandum on the Rule 60(b) motion, that the error by the Court in permitting the answer to the question has been conceded on appeal.

 That motion was heard on the papers and the oral arguments of counsel. Neither side sought an evidentiary hearing or to take any discovery in support of or in opposition to the motion.

 See, e.g.. Commonwealth v. Woodward, 427 Mass. 659, 691 (1998).

 See Smith and Zobel, Rules Practice, 8 Mass. Prac. Series, Sec. 59.2, p. 441.