Rubin, J.
(concurring in the judgment). Although I agree with the court’s disposition of this case, I write to add a few words about the judge’s remarks at the initial hearing where he was first confronted with the recantation by the defendant’s daughter.
At trial, the defendant’s daughter, a child in middle school, was the sole witness for the Commonwealth. Based on her testimony, the defendant, a single mother with sole custody of the victim, the only parent who had always had the child in her care, was convicted of assault and battery. Her sentence included a stay-away order allowing no contact with the child. Fourteen days after the end of the trial, the child recanted the testimony that had led to her mother’s conviction.
Although the majority’s recitation of the facts creates the impression that the child recanted shortly after learning that she would be unable to contact her mother, in point of fact she had been removed from her mother’s care the day after the assault, and had not seen nor, apparently, spoken with her mother for over a year prior to trial.
At the hearing on the defendant’s motion for a new trial, the judge began by saying:
“I can’t tell you how offensive I find it that someone would put their hand up, swear to tell the truth, and then perjure themselves at the expense of someone they love. That is not something I walk away from.
“If I have remedies that I can punish I am likely to use them ....
“I’m going to step it back for a minute because I’m going to find out what my remedies are. I may not wait for the district attorney’s office to take action . . . and I’m talking incarceration. . . .
“I want the Commonwealth — actually I’m going to give everyone the weekend to think about this. I want the Com *783 monwealth to find out what it perceives that my remedies are, and I’m going to do some research as to what I think my remedies are, but these aren’t games we play.”
The defendant argues for the first time on appeal that the judge’s words created an appearance of partiality requiring sua sponte recusal because an outside observer might have thought the judge was attempting to get the witness not to recant in order to, as the defendant puts it, ‘“protect the result of the trial over which he had presided.”
Although I agree with the majority that the defendant has not met her burden of demonstrating even an appearance of partiality, I reach that conclusion by a somewhat different route. I agree with the majority that a judge may, in the judge ’ s discretion, warn a witness when the judge perceives a risk of self-incrimination. See Taylor v. Commonwealth, 369 Mass. 183, 192 (1975). Indeed, it has been said to be ‘“a ‘commendable practice.’ ” Ibid., quoting from Commonwealth v. Slaney, 345 Mass. 135, 142 (1962).
But the judge’s initial words were not the ideal way to warn this child that she might be exposing herself to prosecution by the Commonwealth for perjury. This was a statement indicating that if the child recanted her testimony, the judge was likely sua sponte to order her incarcerated if he was empowered to do so, coupled with a request that the Commonwealth research what tools he himself had to order such incarceration, and a statement that the witness should take the weekend to think about whether she really wanted to recant.
Judges, of course, as a matter of law may not simply jail individuals for perjury. The determination whether to bring a prosecution for this crime is entrusted to the executive branch. See Commonwealth v. Cheney, 440 Mass. 568, 574 (2003). Nor may perjury, standing alone, be punished as a criminal contempt. See Miaskiewicz v. Commonwealth, 380 Mass. 153, 158 (1980). Nor have our appellate courts ever approved holding a juvenile in criminal contempt for anything but violation of a valid court order, see Doe v. Commonwealth, 396 Mass. 421, 423 (1985), let alone incarcerating them as adults, see ibid, (reserving the question of the propriety of such incarceration).
More measured language of warning thus would have been better suited to this situation. This was, after all, a recantation by *784 a child, one found by a jury to be a victim of domestic violence. Her testimony led to her mother’s conviction and to the child’s own inability to have any contact with her mother. Although the judge’s surprise, concern, and skepticism certainly were understandable, more measured language would have been best.
Nor can the majority be correct that the mere fact that the child decided to go ahead and testify at the motion for a new trial despite the judge’s remarks necessarily means there can have been no prejudice. See ante at 779.[1] If the judge’s statement revealed, as the defendant now claims, a desire to preserve the verdict notwithstanding the evidence — and I emphasize that, as I spell out below, the judge’s remarks do not indicate any such desire — the child’s decision to testify would not cure the error.
I therefore would not approve as appropriate words of warning the quoted portion of the judge’s remarks. Nonetheless, as I said at the outset, I agree with the court majority that the defendant has not met her burden even to show error here, let alone a substantial risk of a miscarriage of justice.
As the court majority rightly notes, the record before us, read as a whole, shows not only that there was an absence of any objection or motion below based on the judge’s words, itself a telling silence, but also that at the end of the hearing the judge said, “I’m not trying to put a chill on anybody’s testimony, but I just want everyone to understand how seriously I take this,” to which the child’s counsel responded, “I understand, Judge. I’ll talk to my client.”
This evidence demonstrates that the judge was attentive to the concern the defendant now expresses in her appeal, that he appropriately addressed it, and that his assurances were accepted by counsel for both the defendant and the child, who were present in the court room, and who were in a position to evaluate the judge’s demeanor and the tenor of his remarks. The evidence in the record before us, read in context and as a whole, is thus inadequate to support the defendant’s claim that the judge’s remarks created even an appearance of partiality — regardless of any problematic aspects of some of the judge’s initial remarks. I therefore agree that the judgment should be affirmed. And I concur in the judg *785 ment of the court.[2]

Nor could the fact that defense counsel used the circumstances the only way she could — to argue that the child’s perseverance demonstrated credibility — undo any partiality or appearance of partiality on the part of the judge. See ante at note 7.

Although there is at least some strength to the defendant’s ineffective assistance of counsel claim, I agree with the majority that ineffective assistance has not been shown indisputably on this record, and that the issue should be raised if at all in the first instance in a motion for a new trial. I would not go further, as the majority does, and opine on the propriety of calling Detective Moynihan as a defense witness.